17237, 17238. UNITED STATES FIDELITY AND GUAR-
ANTY COMPANY *v.* KOEHLER; and *vice versa.*

1. This court is without jurisdiction of equity cases. The transfer of this
   case to this court from the Supreme Court necessarily adjudicated that
   any question as to the correctness of the judgment of the trial court
   allowing the amendment in which the plaintiff sought to obtain relief
   in equity, as a reformation of the contract, was eliminated in the lower
   court, and is not now for decision.

2. The cardinal rule in the construction of a contract is to ascertain the
   intention of the parties, and this should be done by a consideration of
   the instrument as a whole. Every other rule of construction is subject
   to this one.

(a) The contract sued on was properly construed by the auditor and the
    trial court to provide that if the plaintiff furnished money with which
    to repair a certain brick kiln, and paid the cost of operating the same
    during a specified test, and if this test demonstrated that the kiln did
    not possess the capacity as to production which was required under the
    contract, and if the owner of the property did not exercise its option
    under the contract to make a second test, and failed to reimburse the
    plaintiff for its expenditures in making the repairs and in making the
    first test, the owner was guilty of a breach of its contract, for which
    the surety was liable.

3. The fact that a petition fails to set forth a complete cause of action is
   not necessarily sufficient cause for refusing an amendment, adding mat-
   ter of substance.

(a) Where suit upon a bond containing a contractual limitation was
    brought after the time limit named in the contract, an amendment to
    the petition, setting up facts to show that the defendant had waived
    the limitation, did not set forth a new and distinct cause of action.

(b) Where in such a case the amendment showed that, prior to the ex-
    piration of such contractual limitation, the surety company induced
    the obligee in the bond to perform certain acts and to expend certain
    money under the reasonable expectation that if these things were done,
    the company would not insist upon the limitation as expressed, there
    was no error in allowing the amendment, over the objection that it set
    forth no facts authorizing the inference of such waiver.

(c) Where, prior to such amendment, the cause had been referred to an
    auditor, who had heard evidence and had filed his report, and the evi-
    dence as heard by him was sufficient to authorize a finding that such
    contractual limitation had been waived, the amendment offered after

Abatement and Revival, 1 C. J. p. 119, n. 91; p. 150, n. 98, 2.
Bankruptcy, 7 C. J. p. 340, n. 54.
Bonds, 9 C. J. p. 130, n. 37; p. 131, n. 39; p. 132, n. 59.
Contracts, 13 C. J. p. 521, n. 18; p. 525, n. 41, 42.
Courts, 15 C. J. p. 1039, n. 54; p. 1147, n. 97.
Interest, 33 C. J. p. 230, n. 2.
Limitation of Actions, 37 C. J. p. 1203, n. 48.
Pleading, 31 Cyc. p. 407, n. 71, 76; p. 408, n. 79; p. 414, n. 13, 27.
Principal and Surety, 32 Cyc. p. 72, n. 18; p. 119, n. 85, 86.

the filing of such report by the auditor was not objectionable as introducing a new and distinct issue. It was permissible to amend the petition so that the inference of a waiver, deducible from evidence already taken by the auditor, might have support as well in the pleadings.

(d) The petition as amended set forth a cause of action, and there was ample evidence to sustain the material allegations of fact therein.

4. Where a trustee in bankruptcy, pending a suit by him as such trustee on a contract, by authority of the bankruptcy court sold and assigned the cause of action to a third person, and thereupon procured from the bankruptcy court an order discharging him as trustee, but nevertheless after such discharge continued to prosecute the suit in his name as such trustee through various orders and proceedings, such orders and proceedings were not void because they were taken after the trustee, had been discharged by the court which had appointed him; and this is true notwithstanding neither the defendant nor the defendant's counsel possessed knowledge of such discharge at the time of such orders and proceedings.

(a) The court committed no error as against the surety company in any of its rulings or charges. The verdict of the jury finding against each of the exceptions to the auditor's conclusions of fact was authorized. There was no error in refusing the motion of the surety company for a new trial.

5. The amount of the plaintiff's claim appearing to be liquidated, the defendant, as a matter of law, was liable for interest thereon from the date it was due; and this is true though the aggregate amount of the plaintiff's recovery, both for principal and interest, will exceed the maximum amount of the company's liability as stated in the bond. The stipulation that the surety would not in any event be liable beyond a certain sum has reference to principal, and does not provide against liability for interest upon such principal from the date of its maturity.

(a) Applying this rule, the court erred in not sustaining the plaintiff's exceptions to the auditor's conclusion of law that the plaintiff was not entitled to recover interest.

DECIDED FEBRUARY 14, 1927. REHEARING DENIED MARCH 5, 1927.

Complaint; from Fulton superior court—Judge Ellis. December 9, 1924.

*Dorsey, Howell & Heyman, Mark Bolding*, for plaintiff.

*Smith, Hammond & Smith, Spalding, MacDougald & Sibley*, for defendants.

BELL, J. The Provident Trust & Security Company brought suit in Fulton superior court against Palmer Brick Company, as principal, and United States Fidelity & Guaranty Company, as surety, upon a bond. This bond was in the sum of $10,000 and was executed to indemnify and save harmless the Provident Company from any pecuniary loss resulting from the breach by the Palmer Company of any of the terms and conditions of clause 4

of a conditional lease between the Palmer Company, as lessor, and the Provident Company, as lessee. Clause 4 of this lease was as follows: "Said party of the first part [the Palmer Company] agrees to put the Shaw kiln located on the premises hereby leased in operation, under the direction and supervision of James W. English Jr. [president of the Palmer Company], or such competent person as he may select, at a cost not to exceed the sum of $8,266, as per estimate contained in letter of P. J. Smith to Thomas B. Felder, dated May 11, 1912, which cost is to be borne and paid for by said party of the second part [the Provident Company]; and when the repairs are so completed and the fires started, the kiln shall be operated for a period of sixty working days under the supervision of said James W. English Jr., or his duly authorized representative, the pay-rolls and costs of operating said kiln during this period to be paid by said party of the second part promptly when due; and if said Shaw kiln fails to burn 30,000 brick per day of twenty-four hours continuously for sixty working days, then this lease shall cease and terminate and no longer be of any force or effect. If, however, for any reason said James W. English Jr. can not be present in person to conduct the test for sixty working days hereinbefore referred to, and said test shall be unsuccessful, then and in that event he shall have the right, at the cost of said party of the first part, to take over said kiln and personally conduct another test for a period of sixty working days, and in the event this second test under the supervision of said James W. English Jr. in person shall prove a success, under the terms of this instrument, then and in that event said party of the second part is to accept said kiln and premises under the terms hereof, and the terms of the lease covered by this agreement shall begin upon the day of acceptance of said kiln by said party of the second part; it being understood that said party of the second part shall be reimbursed by said party of the first part for the actual cost of operating said kiln the first test above referred to, from which amount shall be deducted the sums received from the sale of the brick manufactured during that period and the value of the merchantable brick on hand at the end of said period. In the event said second test shall also prove unsuccessful, said party of the first part shall thereupon reimburse said party of the second part for all costs incurred in repairing said kiln, together with the

expense of operating same during the first test of sixty working days above referred to, it being understood that there shall be deducted from the expense of operation for said period such sums as may be received from the brick manufactured during that period, together with the value of the merchantable brick on hand at that time. It is also understood and agreed that the tests referred to above are to be made from fresh clay brought in from the clay used by said party of the first part, and not from any clay which may now be on hand at its plant. Said party of the first part is to give said party of the second part satisfactory security guaranteeing the carrying out of the provisions of this contract."

J. W. English Jr. was president of the Palmer Company. The bond in suit provided that the surety should not be liable for a greater sum than the penalty of the bond or subject to any action or proceeding thereon instituted later than February 3, 1913. The suit was not filed until March 31, 1913.

Among other things the petition alleged: The plaintiff, in terms of clause 4 of the lease contract, with the Palmer Company, furnished for repairs and for the costs of operating the kiln during the first test a sum in excess of $10,000. This test proved that the kiln was a failure, demonstrating that it did not possess the required capacity as to production. J. W. English Jr. did not elect to make a second test. Both parties to the lease, however, desired that the kiln should be made a success, and if this could be done, that the lease should be continued in force; so that notwithstanding the Provident Company considered that the Palmer Company had now breached its contract and that the liability of the surety company had attached, the Provident Company, on November 4, 1912, after many negotiations between it and the defendants "relative to the breaches of the contract aforesaid and the liability of the" defendant surety company upon its bond, wrote the latter company a letter with regard to the matter, as follows: "In re: Bond dated August 3, 1912, made by the Palmer Brick Company, as principal, and your company as surety, to our company, the Provident Trust Company, as obligee, we beg to say that on the 28th day of October, 1912, we wrote you a letter in which we stated that divers breaches of said contract had been committed as therein specified and set forth. Since writing you said letter we have taken up the situation as a whole, with the view of endeavoring to

have the construction of said kiln completed, as contemplated in the original contract between our company and the Palmer Company. And, to this end, we are willing to proceed under the original contract and clause 4 thereof to furnish additional sums as may be required to complete the repairs called for, and purchase any and all such material as may be required by said Palmer Company, or its agents, to complete the said kiln and put the same in operation, provided such sum does not exceed $3,000. On the other hand, if after said kiln is completely repaired and put in operation, and the 60-day test called for by said paragraph 4 of said contract is had, and the kiln successfully stands such test called for by said paragraph 4 of the said contract, then and in that event your liability on your bond will be at an end." The surety company made the following reply: "Replying to your favor of November 4th in regard to bond dated August 3d, 1912, made by Palmer Company as principal, and U. S. Fidelity Company as surety, and the Provident Trust Company as obligee, we beg to say that the proposition made by you therein to us is hereby accepted." The plaintiff, acting in good faith, furnished additional moneys on behalf of Palmer Company for the completion of the kiln, finishing the same in the early part of February, 1913. Thereupon the plaintiff proceeded to make a second test, James W. English Jr. having failed to make or conduct any such test, which second test, like the first, was unsuccessful, showing that the kiln could not meet the terms and conditions of the lease contract as to production required. The second test was not completed until February 26, 1913, several weeks after the time limit for suit as expressed in the bond. The plaintiff demanded payment from the surety company of $10,000 on March 6, 1913. The provision in the bond to the effect that suit must be brought not later than February 3, 1913, was "distinctly waived by the parties to said contract or bond of indemnity by their conduct as hereinbefore set forth, and especially by the modifying of said contract or bond, as shown by the letters of November 4, 1912, attached as exhibits to this petition."

The surety company answered, and also filed general and special demurrers. The general demurrer was aimed at the failure of the plaintiff to file suit before the expiration of the contractual limitation named in the bond. In response to this demurrer the plain-

tiff offered an amendment seeking, in view of the above letters and other facts set forth, to have the contract sued upon so reformed as to make the suit, begun on March 31, 1913, good in point of time, notwithstanding the limitation originally expressed in the contract. The court allowed this amendment and overruled the defendant's original demurrers and new demurrers lodged against the amendment and against the petition as amended.

The case was then referred to an auditor. The auditor heard evidence and made his report, which was adverse to the plaintiff. When the court was about to render final judgment against the plaintiff, in accordance with the conclusions of the auditor, the plaintiff moved to amend its petition by alleging that because of certain facts the surety company had waived its right to insist upon the contractual limitation as expressed in the contract, and was prevented also from pleading the same by the doctrine of estoppel. This amendment was allowed over various objections interposed thereto by the surety company. In view of this amendment and on motion of the surety company the court recommitted the case to the auditor, with power to take such additional testimony as might be offered in connection with the amendment, but providing that "for the purpose of this rehearing, the entire case is recommitted to the said auditor with leave to file a supplemental report." The auditor, after hearing evidence offered only by the surety company, filed his report under the recommitment, in which his conclusions of law and of fact were for the most part in favor of the plaintiff. There was one notable exception, however, in his conclusions of law, having reference to the liability of the surety for interest. To this conclusion the plaintiff excepted, and to various other conclusions, both of law and of fact, the surety company excepted.

Pending the action, the Provident Company was adjudicated a bankrupt, and J. P. Allen, as trustee in bankruptcy, was made a party plaintiff in its stead by an appropriate order of the court on November 2, 1914. On March 29, 1923, the surety company made a written motion alleging that Allen, as trustee, on February 24, 1916, sold and transferred his rights in this suit, including the bond upon which it was based, to Mrs. Emma Koehler, and that, having disposed of all other assets of the estate, he was, on April 7, 1916, fully and completely discharged as trustee by the bankruptcy

court which had appointed him; that after such discharge "J. P. Allen, as trustee in bankruptcy, no longer existed as an artificial legal person, . . and could no longer prosecute nor could counsel prosecute in his name the suit at bar;" that by reason of these facts certain orders and proceedings taken in the case after his discharge, no person having been made a party in his stead, were in effect void and should be quashed. The orders and proceedings thus attacked were the order recommitting the case to the auditor, the order allowing the amendment on behalf of the plaintiff, setting up waiver and estoppel, and the second and final report of the auditor, as last above referred to. The motion of the surety company to have these orders and proceedings declared void alleged that the facts with reference to the trustee's sale of the cause of action and his subsequent discharge as trustee were unknown to the company or its attorneys until the filing of the motion. Before action had been taken upon this motion, Mrs. Emma Koehler, as assignee of the cause of action, filed a motion in which she set forth a history of all the proceedings which had been had, both before and after the trustee was made a party plaintiff, including those proceedings had in his name after his discharge as trustee by the court of bankruptcy. This motion further alleged that Mrs. Koehler, by her attorneys, was present at all proceedings taken since her purchase of the cause of action, although she had not been made a formal party to the case; that she ratified and confirmed all that had been done in the case by J. P. Allen as trustee, after he had been discharged from his trust by the court of bankruptcy; that her failure to seek substitution of her name as party plaintiff in place of said Allen was by inadvertence and oversight, and that the surety company had not been hurt by the fact that the suit had proceeded in the name of the trustee. The prayer of this motion was that Mrs. Koehler be allowed to continue the action in the name of J. P. Allen, trustee in bankruptcy of the Provident Company, for her use, or that it be continued in her name as party plaintiff. The facts alleged in both of the above-mentioned motions appearing to be true, the court passed an order denying the motion of the surety company and striking the name of Allen, trustee, as a party to the suit, and substituted Mrs. Emma Koehler as party plaintiff in his stead.

The court overruled all exceptions by either party to the au-

ditor's conclusions of law, but approved and referred to a jury all exceptions to the auditor's conclusions of fact. Before the case proceeded to trial the defendant surety company again demurred generally to the petition as amended, and this demurrer was overruled.

Ultimately the case proceeded to trial before a jury on the exceptions of the surety company to the auditor's conclusions of fact. The jury found against each of the defendant's exceptions, after which the defendant filed a motion for a new trial which, as amended, contained the usual general grounds and a number of special grounds. After the verdict in favor of the plaintiff, the defendant moved the court, upon the whole record, to render a judgment in its favor notwithstanding the verdict. This motion and the motion for a new trial were both overruled, and the defendant excepted.

Exceptions pendente lite were taken to the various rulings with which the defendant was not satisfied, and these exceptions are presented in the record for our consideration. The substituted plaintiff, Mrs. Emma Koehler, also sued out a bill of exceptions, in which she complains of the judgment because, as alleged in exceptions pendente lite, the court erred in overruling her exceptions to the auditor's conclusion of law refusing to allow a recovery for interest. Some further facts will be stated in the opinion.

Notwithstanding the voluminous record and the many exceptions and assignments of error, the principles which must control our judgment are few. In our view of the case, the rulings made in the opinion below are controlling, rendering it unnecessary to deal seriatim and in detail with the many exceptions and assignments.

1. This case first went to the Supreme Court and was by that court transferred to this court. In the opinion of that court, rendered in connection with its judgment transferring the case, it was said: "An amendment to the petition was filed, seeking to reform the contract on the ground that the agreement to modify included modification of the above-quoted clause of the bond, but alleging that such part of the agreement was omitted from the letters by mutual mistake of the parties. The case was submitted to an auditor, and his report found against the application to reform the contract. The plaintiff filed exceptions of law and fact to the auditor's report, and at a hearing the judge announced his decision

against the exceptions; and while a judgment was being prepared by the defendants, the plaintiff presented another amendment to the petition, alleging facts relied on as a waiver by the defendant, and estoppel from insisting on the said quoted clause of the bond. The amendment was allowed and the entire case recommitted to the auditor. No judgment was ever rendered overruling or otherwise disposing of the above mentioned exceptions to the auditor's report, and consequently there were no further proceedings with reference to them. The auditor heard the case on second reference, and made his report, to which there were exceptions by the plaintiff and the defendant, and a final judgment to which both parties excepted separately; but all the proceedings after the above amendment setting up waiver and estoppel, in so far as they related to said clause of the bond, were on the basis of waiver and estoppel, and not upon the basis of a right to reform the contract. In these circumstances the allowance of the last amendment and subsequent proceedings was the equivalent of striking the equitable features from the case, and rendered it in its finality a purely common law proceeding on the contract. The case being thus stripped of its only equitable feature—that is, the prayer for reformation, the Supreme Court has not jurisdiction." *U. S. Fidelity &c. Co.* v. *Koehler,* 161 *Ga.* 934 (132 S. E. 64). It necessarily follows that any question as to the correctness of the judgment of the court below allowing the amendment in which the plaintiff sought a reformation of the contract has been eliminated and is not now for decision.

2. Under the auditor's construction of the contract the Palmer Company, the lessor, breached its contract and became liable for the sums advanced by the plaintiff for repairs and also for operating the kiln during the first test, as soon as this test was made and proved that the kiln did not possess the capacity as to production which was required under the contract. From this construction it follows that when the Palmer Company had failed to reimburse the plaintiff for these expenditures and the plaintiff had demanded payment of the surety company, the cause of action against the latter was ripe. Counsel for the surety company, however, contend that the bond was not breached until and unless a second test was made by English and this test also proved unsuccessful. The determination of the question thus presented will

depend upon an interpretation of clause 4 of the lease contract. The cardinal rule in the construction of contracts is to ascertain the intention of the parties, and this should be done by a consideration of the whole instrument. Neither the lessor, nor its officer and agent, English, was required to make a second test; this was optional. To our minds, the intent of the parties in making this contract was that the plaintiff was to furnish the money for reconstructing the kiln and for making a first test. If this test was successful, the condition of the lease was removed and it became operative as an unconditional contract of lease between the parties. In that event the Palmer Company would have complied with its obligations and there would have been no liability either upon it or the surety company. It seems clear, however, that if the first test proved unsuccessful, the Palmer Company, merely by declining to go further, could not have left the plaintiff without a lease and also without redress for the large sum of money which it had spent in repairing and operating another's property. In our opinion, under a proper construction of clause 4 of the contract, where the plaintiff complied with its obligations by furnishing the required sum for repairs and also the costs of operating during the first test, if that test demonstrated that the plant was a failure in point of production, and English did not exercise his right to make a second test, the Palmer Company became obligated to pay the plaintiff the costs of repairing the kiln and of conducting the first test, and on its failure to pay accordingly, the surety company became liable for these amounts, not in excess of its bond. We agree with the construction placed upon the contract by the auditor and the trial court.

3. The amendment in which the plaintiff sought to set up grounds of waiver and estoppel against the surety company, so as to avoid the effect of the contractual limitation of the bond that any action or proceeding thereon should be instituted not later than February 3, 1913, alleged, among other things, the following: On October 28, 1912, it had been demonstrated by the first test provided for by clause 4 of the lease contract that the kiln, with the outlay originally contemplated, could not be made to meet the requirements of the contract as to production, and that since English did not exercise his right to make a second test, but failed and refused to do so, the Palmer Company and the surety com-

pany then and there became liable to the plaintiff for the amounts which the plaintiff had expended for the repairs and for the cost of the first test. But notwithstanding this accrual of liability against the opposite parties, the plaintiff was anxious that a further effort be made to accomplish the successful operation of the kiln, provided this effort could be made without prejudice to the rights of the plaintiff as against the other parties. The Palmer Company was also interested in making the kiln a success, as was the surety company, to the end that it might be relieved of the liability that had already accrued against it under the bond. The amendment further alleged:

"20. With this situation existing, petitioner shows and avers that proper officers of the Provident Company, the Palmer Company, and the U. S. Fidelity Company met and held a conference in the office of T. B. Felder, on Nov. 4, 1912, said officers being G. H. Fiedler, president of the Provident Company, J. P. Allen, vice-president, T. B. Felder, attorney of said company, James W. English Jr., president of Palmer Company, W. A. Smith, general agent of U. S. Fidelity Company, Victor L. Smith, its attorney, and A. C. Supplee, underwriter for the said Fidelity Company.

"21. Petitioner shows that at said conference the officers of the Provident Company and the Palmer Company discussed the feasibility of making further repairs and doing additional constructive work on said kiln and securing suitable cars, either by purchase or rebuilding those already in use, in order to handle the brick through said kiln; that it was believed by said Provident Company and Palmer Company that by making said improvements and doing said additional work that said kiln could be made a success and would successfully burn 30,000 commercial hard brick per day of 24 hours for a period of 60 days; and it was thereupon agreed that said Provident Company would furnish additional sums under clause 4 of said original contract to the extent of $3,000, in order that said improvements might be made and thereafter a 60-day test made to determine if said kiln could be made a success. This agreement was made in the presence and with the consent and acquiescence of the surety company, and it was discussed in the presence of the officers of the defendant Fidelity Company, that the making of such expenditures and the conducting of such test could not be accomplished by February 3, 1913,

the original period of limitation specified in the bond executed by the said Palmer Company. as principal and the said Fidelity Company as surety to said plaintiff for the faithful performance of said contract.

"22. Petitioner further shows and avers that from a discussion had in the office of T. B. Felder on November 4, 1912, between the officers of said Provident Company and Palmer Company, in the presence of the officers of the Fidelity Company, it was manifest to the representatives of the said Fidelity Company that the further work on said kiln and the carrying out of an additional 60-day test could not be completed by February 3, 1913, but that if such additional work were undertaken and such additional test were made, an additional period beyond February 3, 1913, would be required; and it was the intention on the part of the said Provident Company, if it advanced such additional sums and modified the then liability of said defendants that had already accrued on said bond, that such additional time should be granted as would be reasonably necessary.

"23. Petitioner shows that the whole situation relative to the matters hereinabove referred to was discussed by the plaintiff, defendant, Palmer Company, and James W. English Jr., before and in the presence of the defendant surety company, and to the surety company that it was the urgent desire of the plaintiff, the defendant, Palmer Company, and English to repair and reconstruct the kiln and make an additional 60-day test. The plaintiff proposed and intended to spend money to construct the kiln, and defendant, Palmer Company, and English consented thereto, and all of said parties intended to have the surety consent to remain bound under the bond and to have the surety consent to extend the time limit of the bond, which limit, as fixed in the bond, was February 3, 1913; and all of said intentions and consent were so declared to the surety at their conference.

"24. Petitioner shows that although, in the letter written by the plaintiff to the surety company in reference to said matters, there was no definite proposal with reference to an extension of the time limit of the bond, and although the surety did not by express words agree to extend the time limit, that the leaving out of its letter said intention to have the time limit extended was from no intention on the part of the plaintiff to waive the claim

that such additional time would be necessary; but such omission was inadvertent; and plaintiff shows that in going ahead under said agreement, it relied upon said surety company not insisting on said time limit. The plaintiff, after having written said letter and having received an acceptance of the proposal therein made, did in good faith and with all reasonable diligence proceed to comply with said modified agreement in furnishing the funds for making further improvements on said kiln and for conducting said test, and in not insisting on the liability that had accrued on October 28 against said defendant surety company on said bond, and, on account of the facts herein alleged, having a right to believe that said surety company was consenting thereto and would not insist on the limitation in said bond.

"25. Petitioner shows and avers that said surety company knew and in good faith must have known that said plaintiff was incurring said additional expense for making said improvements and for conducting said test on the faith that said surety company waived and would not claim that the time limit of said bond should expire February 3, 1913.

"26. Petitioner shows that said surety company, with full knowledge of all the facts and circumstances hereinbefore set forth, stood by and permitted said plaintiff to go ahead and make said further improvements and expend large sums of money, exceeding the amount of $3,000 for perfecting and reconstructing said kiln and for conducting the test referred to in clause 4 of the said contract, and to forego its right to bring suit against the surety on said bond prior to February 3, 1913, on the liability that had accrued on or about October 28, 1912, as herein alleged, without notifying plaintiff that said surety company had not agreed and did not intend to extend said original time limit, and would not do so, as it was in good conscience and equity required to do, unless it was willing for such time limit to be waived or extended.

"27. Petitioner shows and avers that said conduct of said surety company in standing by with the knowledge hereinabove specified and allowing said plaintiff to expend said large sums of money and to forego its right to sue on said bond prior to February 3, 1913, in the belief that said surety company would not insist on said time limit and the knowledge of the surety company that but for the belief that said time limit had been waived, plaintiff

would not have expended said additional sums for completing and reconstructing said kiln and conducting said test, was such· as to estop said defendant surety company from pleading said time limit of February 3, 1913, against the suit brought by said plaintiff.

"28.  Petitioner shows that while said surety company may not have, by any express statement or agreement in writing, consented that said additional work could be done and said 60-day test could be made without prejudicing the rights of said plaintiff under the terms of said bond, it did by its conduct and its knowledge, as herein alleged, and its duty to speak when it knew of the intention and expectation of said plaintiff, estop it from taking advantage of said limitation in said bond, and did thereby waive said limitation in said bond, and that to allow said defendant surety company now to plead said time limitation would be a fraud upon said plaintiff.

"29.  Wherefore plaintiff shows to the court that by the statements hereinabove set forth, said defendant surety company is prevented by law from pleading said time limit, both under the doctrine of waiver and estoppel; and the petitioner prays that the court so find.

"30.  Petitioner further shows that in view of the agreement entered into between the plaintiff and the defendant surety company on November 4, 1912, by virtue. of which said defendant company consented that said plaintiff should go ahead, expend at least $3,000 in making further improvements on said kiln, and conducting a 60-day test in the burning of brick after the completion of said kiln, and in further view of the statements made at the conference held on November 4, 1912, that more than 30 days would be required to secure cars and make the other improvements contemplated in connection with said kiln, that said time limit of February 3, 1913, was expressly waived."

The letters referred to in paragraph 24 of this amendment are those which are copied in full in the statement of facts preceding this opinion.

The court did not err in allowing the plaintiff to amend the petition so as to set up waiver and estoppel. Although the petition might not have set forth a complete cause of action prior to this amendment, that fact alone would not necessarily be cause for refusing an amendment, adding matter of substance. *Ellison*

v. *Ga. R. Co.*, 87 *Ga.* 691 (7) (73 S. E. 255). The amendment itself did not add a new and distinct cause of action. The facts set forth were sufficient to warrant the inference that the company had waived its right to insist upon the contractual limitation set forth in the bond. "Any agreement, declaration, or course of conduct on the part of the insurance company which leads a party insured to honestly believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract." Insurance Co. *v.* Eggleston, 96 U. S. 572 (24 L. ed. 841). See also *McDaniel* v. *German-American Ins. Co.,* 134 *Ga.* 189 (2) (67 S. E. 668); Lynchburg Cotton Mill Co. *v.* Travelers Ins. Co., 9 L. R. A. (N. S.) 654, and note (149 Fed. 754, 79 C. C. A. 464). It was not a valid objection to the plaintiff's amendment that it was tendered after the auditor had filed his report. In *Lane* v. *Tarver,* 153 *Ga.* 570 (4) (113 S. E. 452), the Supreme Court, with reference to a similar question, said, "It is too late, after the court has approved the auditor's report, for the defendant to file, by way of amendment, new and independent defenses to the plaintiff's action; but it is always permissible to amend pleadings, even after the auditor's report has been approved by the court, so that the same will support a decree administering the proper equitable relief to all the parties upon the facts reported by the auditor. *Milner* v. *Mutual B. & L. Asso.,* 104 *Ga.* 101 (3, 4) (30 S. E. 648). This was the purpose of the amendment which was allowed; and this is always permissible. The pleadings can always be adjusted by amendment to the facts as found by the auditor or proved before the jury. If the plaintiff wished further time to introduce additional evidence, in view of the amendment, he should have applied to the court to have the case recommitted for this purpose." The defendant surety company in the present case moved to recommit the case to the auditor, and this motion the court allowed. The amendment here introduced no new or distinct issue, but was supported by evidence which had already been introduced before the auditor. In *Sterling Electric Co.* v. *Augusta Tel. &c. Co.,* 124 *Ga.* 371 (52 S. E. 541), the Supreme Court held that, "Where an issue was made before an auditor, evidence introduced upon it, and the report of the auditor found in

regard to it, there was no error in allowing an amendment of the pleadings adjusting the prayer for equitable relief to the finding of the auditor, but not introducing any new or distinct issue." None of the objections urged to the allowance of the amendment contained any merit. The petition as amended set forth a cause of action, and there was ample evidence to sustain the allegations therein made.

4. In the use of the word "plaintiff" we have not, up to this time, intended to refer to any particular person as the party prosecuting the suit, but have used the term in a more or less general way to designate any one of the persons who have occupied the position of plaintiff during the course of the litigation. The Provident Company, after filing the suit, was adjudicated a bankrupt. On November 2, 1914, J. P. Allen, as trustee in bankruptcy, was made party plaintiff in its stead. The trustee, after selling and assigning the cause of action and the suit, with all other assets of the bankrupt, to Mrs. Emma Koehler, applied for and obtained discharge from his trust by the court of bankruptcy, and notwithstanding the knowledge of Mrs. Emma Koehler and her attorneys of this fact, the case continued in his name through certain proceedings, namely, an order allowing an amendment to the petition; an order recommitting the entire case to the auditor; and the hearings before the auditor and the making and filing of his report. Immediately upon the discovery of the trustee's previous discharge the surety company moved to quash the proceedings just enumerated. Attorneys for Mrs. Koehler filed a motion in which she alleged that "since the purchase by her of the choses in action involved in said suit, she has been the real party at interest in said suit and the person having the legal interest in the same, and the master of said suit, and has been prosecuting the same by her said attorneys at law, in the name of Allen, trustee, etc."; and that she "confirms and completely and fully ratifies the action heretofore taken by her attorneys in said suit in her behalf, and says that she is the only person having any interest in said suit or the proceeds thereof, and the right to prosecute the same." This motion concluded with a prayer that the name of the trustee be stricken and that the name of Mrs. Koehler be substituted instead. By a stipulation in the record the affidavits attached to the respective motions were ac-

cepted as evidence of the allegations made therein. The surety company, however, introduced evidence to show that neither it nor its attorneys had any knowledge of the alleged interest of Mrs. Koehler, or of the fact that the attorneys who purportedly appeared for the "trustee" in bankruptcy were in fact appearing for Mrs. Koehler, and that the only information "in connection with Mrs. Koehler" that the defendant or its attorneys ever had during the proceedings in question was to the effect that she was a creditor of the bankrupt estate, "but there was no information that she had become the owner of the assets being administered by the trustee in bankruptcy." The court overruled the defendant's motion to quash the proceedings, but sustained and allowed the motion of Mrs. Koehler.

In our opinion the suit did not cease to have a party plaintiff merely because the trustee was discharged in bankruptcy. The situation is unlike that which arises on the death of an individual plaintiff, in which case the proceedings must be halted until some one else is made a party. Allen continued to live and to act in this litigation as trustee in bankruptcy. He acted without authority, it is true, but the mere fact that he acted without authority would not, ipso facto, remove him from the case as a party. Assuming that he was subject to removal and that if objection had been made the court would not have permitted him to continue the action even for the use of the assignee (see *Hargrett* v. *Jolley*, 34 *Ga. App.* 662 (2), 130 S. E. 602), the proceedings were not suspended where no such objection was made and acted upon. The question relates not to the existence of a party plaintiff, but to the authority of a plaintiff actually existing and conducting the litigation. The surety company might have raised the question of authority, if necessary for its protection. It did ultimately raise the question, but was met with conclusive proof that Mrs. Koehler, the assignee of the cause of action, had been present through her attorneys at all stages of the case, approving and ratifying all that had been done or was being done in the name of Allen as trustee, and that no other person had any right or interest in the suit or the cause of action. We think this was a complete answer to the defendant's motion to quash. *Peoples Bank* v. *Cleveland*, 117 *Ga.* 908 (44 S. E. 20) ; *Gate City Cotton Mills* v. *Cherokee Mills*, 128 *Ga.* 170 (3) (57 S. E. 320) ; *Liverpool &c. Ins. Co.* v. *Ellington*,

94 *Ga.* 785 (21 S. E. 1006); *Cook* v. *Buchanan*, 86 *Ga.* 760 (13 S. E. 83); *Bowe* v. *Gress Lumber Co.*, 86 *Ga.* 17 (12 S. E. 177); *Cobb* v. *Edmondson*, 30 *Ga.* 30 (1); Hegewisch *v.* Silver, 140 N. Y. 414 (35 N. E. 658); 1 C. J. 116-124, 149, 150; White *v.* Stanwood, 21 Mass. 380; Cleverly *v.* Whitney, 24 Mass. 36; Bankruptcy Act, § 46; Hull *v.* Burr, 64 Fla. 82 (59 So. 787). In *Epting* v. *Jones,* 47 *Ga.* 622, the Supreme Court held that it is not a good plea to a suit on a promissory note that it is brought by the true owner in a fictitious name, it not appearing by the plea that the defendant has any defense.

What we have said with reference to the motion of the surety company to quash the proceedings will apply equally to the exceptions to the order allowing Mrs. Koehler to be substituted in place of the trustee as party plaintiff. This is true because an examination of the record discloses that the objections to making Mrs. Koehler a party were limited to the same grounds as those which were relied on in the motion to quash. Thus we are not confronted with the question as to whether the order making Mrs. Koehler a party was a violation of the rule that new and distinct parties can not be added by amendment unless expressly authorized by law, or of the general principle that the plaintiff, in order to recover, must show that he had the title to the cause of action at the institution of the suit. See *Suwanee Turpentine Co.* v. *Baxter,* 109 *Ga.* 597 (35 S. E. 142); *Dunlap-Huckabee Auto Co.* v. *Central. Ga. Auto Co.,* 31 *Ga. App.* 617 (122 S. E. 69). But, without deciding this question, it would seem that the purchaser of a cause of action at a bankruptcy sale upon which a suit is pending in behalf of the trustee in bankruptcy as plaintiff would not be a new and distinct party within the first of the rules mentioned, and that such purchaser, if made a party, would not be prevented from recovering on the theory of a want of title at the filing of the suit. See *Gate City Mills* v. *Cherokee Mills,* supra, and § 46 of the bankruptcy act. There was no error in the rulings to which we have just alluded.

On principle, the above disposes of all contentions of the plaintiff in error. There was no material error in any of the court's rulings. The verdict against the exceptions to the auditor's conclusions of fact was as to each exception authorized. There was no merit in any of the special grounds of the motion for a new trial.

5. Coming now to the assignment upon the court's judgment overruling the plaintiff's exception to the auditor's conclusion of law that the plaintiff was not entitled to recover interest, we are of the opinion that the court committed error in its ruling upon this question. "All liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party is liable and bound to pay them; if payable on demand, from the time of demand." Civil Code (1910), § 3434. That is certain which may be made certain. It was not known at the time of making the contract just what would be the amount of the liability, if any, under the bond, but the defendant had contracted to pay to the Provident Company the cost of repairing the brick kiln, and also to pay the cost of operating the kiln during a stated period for the purpose of testing its capacity after such repairs. There could be no question as between the Palmer Company and the Provident Company as to whether any cost on either score was necessary, reasonable, or proper. Under the contract the Palmer Company was to make the repairs and conduct the tests, and the Provident Company was to foot the bill, paying the costs as they accrued under the management and conduct of the Palmer Company. If, after a breach on the part of the Palmer Company in failing to reimburse the Provident Company for such expenditures, the Palmer Company could not have raised any question as to the propriety or reasonableness of any item, then the surety company could not have done so. "A debt is liquidated when it is rendered certain what is due and how much is due. That certainly need not be contemporaneous with the agreement out of which it results." *Bartee* v. *Andrews,* 18 *Ga.* 407. The surety company, upon the trial, raised no question as to the correctness of any item of the plaintiff's claim. It stood upon the proposition that it was not liable to the plaintiff in any amount whatsoever, because there had been no breach of the contract. Under the facts appearing, the plaintiff's claim became liquidated when it paid the cost of repairs and of operating during the first test, especially when there is no dispute as to any item composing the claim, and where it indisputably appears that the obligors in the bond sued on were each liable either for the full amount sued for or for nothing. The plaintiff had expended under the contract more than $10,000, but this was the maximum amount

of principal which it could sue for, and its claim was limited accordingly. Upon the question of whether the sum was liquidated, see *Roberts* v. *Prior,* 20 *Ga.* 561; *Council* v. *Hixon,* 11 *Ga. App.* 818 (76 S. E. 603); Kervin *v.* Utter, 120 App. Div. 610 (104 N. Y. S. 1061); *Morgan* v. *Colt Co.,* 34 *Ga. App.* 630 (6) (130 S. E. 600), and cit.

But it is said that if interest be added, the liability of the surety company will be increased beyond the penalty of the bond. A sufficient reply to this contention is found in *Frink* v. *So. Express Co.,* 82 *Ga.* 33 (5) (8 S. E. 862, 3 L. R. A. 482). The stipulation that the surety was not to be liable for an amount exceeding $10,000 clearly had reference to the principal, and was not intended to relieve the surety from liability for interest if it failed to pay the principal when due. See further, in this connection, 9 C. J. 130, § 242, and citations. We have here no cross-bill of exceptions. There are two independent bills.

*Judgment in case No. 17237 affirmed; in case No. 17238 reversed. Jenkins, P. J., and Stephens, J., concur.*