## 20256. CENTRAL OF GEORGIA RAILWAY COMPANY *v.* GREENE & COMPANY.

DECIDED SEPTEMBER 8, 1930.

*Harris, Harris & Popper, S. M. Mathews,* for plaintiff in error.
*George B. Culpepper Jr.,* contra.

BELL, J. George P. Green & Company sued Central of Georgia Railway Company for failure to furnish promptly a car requested by the plaintiff for a shipment of peaches. The defendant filed a general and special demurrer, which the court overruled. At the trial the plaintiff amended the petition, after which the defendant made a motion to dismiss, which was also overruled. After verdict

for the plaintiff, the defendant moved for a new trial; and this being refused, the defendant excepted. The material allegations of the petition were as follows: On June 20, 1925, the plaintiff ordered a refrigerator car to be placed by the defendant, a common carrier, at the Southern yards in Fort Valley, Georgia, on June 22 at 1 p. m., for a shipment of 387 bushels of peaches which were packed and ready to be loaded, and which the plaintiff had sold to Louis Rosasco for $1.75 per bushel, provided the car was loaded and ready to move on the afternoon run of June 22. The car was not placed until 6:30 p. m. on June 22, and was then found to be in bad condition, and was not finally delivered for the plaintiff's use until 11 p. m. of that day, and did not "roll" until the afternoon of June 23. There was a decided drop in the market on the afternoon of June 22, and the plaintiff lost the sale to Rosasco, and was forced to resell the peaches at $1.25 per bushel on the following day, which was the best price obtainable at that time. Plaintiff's loss of 50c. per bushel was due wholly to the failure of the defendant to place the car on time for loading and "pulling" on the afternoon of June 22, and to its failure to provide a car reasonably suited for the purpose for which it was intended. Because of the facts stated, the defendant was indebted to the plaintiff in the sum of $193.50, for which the plaintiff prayed judgment.

The defendant demurred on the ground that the petition set forth no cause of action; that the allegations as to the ordering of the car were vague, indefinite, and uncertain, in that it was not alleged whether the order was in writing, and, if so, upon whom the same was served; that no legal measure of damages was set forth in the petition; and that the petition showed that the defendant had complied with its every duty to the plaintiff, by furnishing a car on June 22 as ordered, and that the averment as to the unsuitability of the car was a mere conclusion of the pleader, unsupported by the facts alleged. The plaintiff amended the petition by alleging that the order for the car was in writing and was served upon C. H. Sammons, agent for the railway company at Fort Valley, Georgia; and by further alleging in effect that 50c. per bushel represented the difference between "the contract price" on June 22 and the market price of peaches of the same variety, condition, and character on June 23. The motion to dismiss presented the contention that the petition was not maintainable, be-

cause it sought to set up a contract upon the part of the defendant to give to the plaintiff a preference by way of special service. It was stated in the motion that under the Hepburn act, and the tariffs promulgated in pursuance thereof, orders are not to be accepted for the placement of cars at any specified hour; whereas the petition sought to recover upon the basis of a special contract for the placement of a car at a specified time, which contract, the defendant insisted, is forbidden by the Federal law, since it would have the effect of giving to one shipper a preference or special advantage over others.

The motion for a new trial was amended by the addition of various special grounds, the nature of which will hereinafter appear.

■ The plaintiff in error makes the contention, both under the general demurrer and the motion to dismiss, that the petition shows that the plaintiff was seeking to recover upon a special contract for the placing of the car at a specified hour, contrary to the acts of Congress regulating interstate commerce. It is also insisted that if the suit is based on the Georgia statute as to furnishing cars (Civil Code of 1910, §§ 2774, 2775), it is defective for other reasons pointed out. It is settled law that the defendant could not have made a valid contract to furnish to the plaintiff at a certain time a car to be sued for an interstate shipment (Davis v. Cornwell, 264 U. S. 560, 44 Sup. Ct. 410, 68 L. ed. 848); but we can not construe the action as proceeding upon any such theory. Nor does it appear that the plaintiff is relying upon the Georgia act. Properly construed, the action is a suit to recover damages for a breach of the common-law duty of the defendant as a common carrier to furnish cars for the transportation of freight, within a reasonable time after notice. Southern Railway Co. v. Moore, 133 Ga. 806 (67 S. E. 85, 26 L. R. A. (N. S.) 851); Youmans v. Georgia & Florida Ry. Co., 142 Ga. 781 (83 S. E. 790); Civil Code (1910), § 2729. The petition nowhere mentions the Georgia statute, nor anything in the nature of a special contract (see Atlantic Coast Line R. Co. v. Wells, 130 Ga. 55, 60 S. E. 170); and the allegations taken as a whole are more appropriate to a suit for a breach of the carrier's common-law duty in regard to such matter. See, in this connection, 10 C. J. 75. It is said, however, that the petition is fatally defective as a suit upon the common-law liability, because there is no allegation that the goods were offered for transportation.

Since the petition shows that the car was finally placed by the defendant and used by the plaintiff, with no question as to the tender of the goods at an earlier hour, the allegations would seem to eliminate any question as to tender; but regardless of this, it is averred that the agent of the defendant "was told repeatedly that the peaches were on the floor of the packing-house ready to be loaded, and that the car had been sold to move on the afternoon run of June 22." This was a sufficient offer of the goods for transportation. See *Ethridge* v. *Central of Georgia Ry. Co.*, 136 *Ga.* 677 (1 *b*) (71 S. E. 1063, 38 L. R. A. (N. S.) 932, Ann. Cas. 1912D, 128) ; *Thompson* v. *Atlantic Coast Line R. Co.*, 26 *Ga. App.* 487 (2) (106 S. E. 322).

A final question on the pleadings is in relation to the measure of damages. The third ground of the demurrer was that "no legal measure of damages is set forth in said petition." In a case of this sort, the correct measure of damage is ordinarily "the difference in the market value of the fruit at the point of shipment at the time the cars should have been furnished, and at the time they were actually furnished." *Chattanooga Southern R. Co.* v. *Thompson*, 133 *Ga.* 127 (4) (65 S. E. 285). It is observed that the ground of the demurrer as to this matter was aimed at the petition as a whole; and in view of this fact, it can be treated only as a general demurrer. *Southern Ry. Co.* v. *Chambers*, 126 *Ga.* 404 (4), 409 (55 S. E. 37, 7 L. R. A. (N. S.) 926) ; *Douglas, Augusta & Gulf Ry. Co.* v. *Swindle*, 2 *Ga. App.* 550 (4), 556 (59 S. E. 600). We think that as against a general demurrer the petition did not wholly fail to allege any recoverable damages. It is averred that the plaintiff had sold the peaches for $1.75 per bushel, provided they were shipped on the afternoon run of June 22, but that they were not so shipped, and that the plaintiff sold them on the following day for $1.25 per bushel, which was the best price obtainable at that time. It is alleged that in the meantime the market had declined and that the loss of 50c. per bushel was due entirely to the failure of the defendant to furnish the car as requested. True, the allegation that the plaintiff had sold the peaches on June 22 at the price stated did not establish the market value as of that time, but as against general demurrer it is sufficiently shown that the price which the plaintiff did receive after the car was furnished was the market value; and if the market had "declined" to this price, it

necessarily follows that the plaintiff had sustained some damage in consequence of the defendant's breach of duty as alleged in the petition. Considering the further averment that the plaintiff's loss of 50c. per bushel was due wholly to such breach, we can not say that the petition was subject to general demurrer because "no legal measure of damages is set forth." Since the demurrer fails to specify any particular part of the petition that is defective, but seeks an absolute dismissal of the entire petition, it must necessarily fail where the petition shows any damage resulting from the defendant's wrong, however measured.

Of course, the petition should have been dismissed on general demurrer if it had shown no damage whatever traceable to the defendant's act; but no such penalty should be applied for a simple failure to state the damage by the proper measure,—in which case the petition should be dismissed only in the event the defect is pointed out by timely special demurrer and the plaintiff then fails to correct it after opportunity to do so. *Ford* v. *Fargason,* 120 *Ga.* 708 (6) (48 S. E. 180); *City Council of Augusta* v. *Lamar,* 37 *Ga. App.* 418 (5) (140 S. E. 763). Moreover, the petition would seem to disclose a purpose on the part of the pleader to claim the proper measure of damages, although in the amendment it was stated in effect that the 50c per bushel represented the difference between the "contract price" for the peaches on June 22 and the market price on June 23. Apparently the pleader was intending to say that the price at which he had sold the peaches for June 22 delivery, referred to as the "contract price," was in fact the market price as of that date, and that the same was true also of the price at which he sold the peaches on the following day. Though in respect of the measure of damages the petition was imperfectly and obscurely drawn, we can not say that it should have been *unconditionally dismissed,* as on general demurrer, because of such defect. The above will dispose of all questions in relation to the pleadings that were discussed or mentioned in the brief of counsel for the plaintiff in error.

■ In one of the grounds of the motion for a new trial the defendant complains that the court erred in refusing to instruct the jury, that, under the provisions of the interstate-commerce act, a carrier is prohibited from taking orders for the placement of cars at any specified hour; and in another ground it is insisted that the

court erred in omitting to charge this principle even without request. There is no merit in these contentions. The evidence supported the allegations of the petition as to the filing of a request for the car, showing that the request was made in writing on June 20, which was Saturday, and that it notified the defendant that the car would be wanted for "p. m. loading" on June 22, and that according to the established custom governing the carrier and its customers in the shipment of peaches such a request was understood as asking for the car by 1 p. m., or certainly in time for loading by 4:10 p. m., which was the hour of the "afternoon run," or the "afternoon pulling time" for cars loaded in the Southern yards, during the season of 1925. The evidence also established the fact that the car was not tendered to the plaintiff until after 6 o'clock in the afternoon of June 22, too late for shipment on that date, and that because of this delay the peaches were not shipped until the afternoon of June 23. There was no impropriety in the plaintiff's request that the car be furnished in time for loading for a certain train. The defendant was entitled to know when the car would be needed, and the fact that such information was specifically given did not establish that the plaintiff was relying upon a contract for a special or preferential service. As to this matter the evidence corresponded with the allegations of the petition, and showed that the plaintiff was seeking a recovery for a breach of the defendant's common-law duty to furnish the car within a reasonable time after notice, and there was no evidence whatsoever to authorize a charge in regard to the invalidity of a special contract.

■ The defendant objected to evidence that the plaintiff had sold the peaches for $1.75 per bushel, provided they could be loaded and shipped on the afternoon of June 22; the contention being that the measure of damage "was the difference between the market value on the two dates alleged in the petition," and that evidence of a particular offer or sale would be irrelevant and immaterial in establishing the plaintiff's damage. While the price at which the plaintiff had sold the peaches was not to be taken as the proper criterion of value in estimating the plaintiff's damage, evidence of such sale was admissible as a circumstance to be considered with the other evidence in determining the market value at that time. *Southern Ry. Co.* v. *Williams,* 113 *Ga.* 335 (38 S. E. 747) ; *Kimsey* v. *Rogers,* 166 *Ga.* 176 (4) (142 S. E. 667) ; *Lott* v. *Banks,* 21 *Ga.*

*App.* 246 (4) (94 S. E. 322). Moreover, the other evidence showed without dispute that the market value was $1.75 on the afternoon of June 22, and was $1.25 on the afternoon of the following day; and thus the defendant could not have been harmed by any evidence relating to a single sale. *Glynn Canning Co.* v. *Adams Co.,* 26 *Ga. App.* 365 (2) (106 S. E. 207); *Southern Nursery Co.* v. *Montfort,* 29 *Ga. App.* 328 (4) (115 S. E. 47); *Klimax Overall Co.* v. *Converse,* 39 *Ga. App.* 742 (4), 751 (148 S. E. 349). Notwithstanding the ambiguity of the petition in regard to the measure of damages, the evidence established the proper measure to be awarded in a case of this sort, where liability is shown; and there was no cause for a new trial in the admission of the evidence objected to. This ruling will also dispose of an exception to a portion of the court's charge referring to the measure of damages.

■ It is contended that the court nowhere in the charge submitted to the jury the defendant's contention that the car was placed *in the afternoon* of June 22, and that, since the plaintiff's order for the car did not name a particular hour, the furnishing of the car at any "p. m." hour of that date was a compliance with the defendant's duty in the premises. The defendant, as we have said, was not required by law to furnish the car at any particular hour, but had the duty merely of exercising ordinary diligence in complying with the plaintiff's request, that is, of furnishing the car within a reasonable time, in view of the other demands and all the circumstances; but we can not agree that the defendant could reasonably have construed the plaintiff's request as asking for the placing of the car at any time by midnight of June 22. The evidence showed without dispute, that, according to a local custom relating to the shipment of peaches, a request for a car for "p. m. loading" was understood and accepted as a request for placement in time for loading "by the afternoon run," or "the afternoon pulling time," which was 4:10 p. m. Several witnesses testified to the existence of such a custom, and no witness testified to the contrary. The agent of the railway company did testify that p. m. "means any time after 12 o'clock," but from his entire evidence it appears that this was a mere definition of the expression "p. m.," considered in the abstract, and that he did not intend to contradict the testimony of the other witnesses as to the existence of the custom referred to. He further testified: "They order cars for particular time, a. m.,

or p. m. If they order them for p. m. Monday, we would undertake to put it there before Monday p. m." It follows that the defendant's contention as to the meaning of the plaintiff's request for the car was conclusively ousted by the evidence, and the court would not have been warranted in submitting such contention to the jury. But in various other grounds of the motion for a new trial it is contended that no custom as to the meaning of requests for cars or as to the time of furnishing the same could have any proper application in this case, since such a custom could only tend to require the railway company to give a special or preferred service in a particular locality, and would thus infringe the provisions of the interstate-commerce act, to which attention has already been called. These assignments were based upon objections to the testimony of several witnesses in regard to the custom indicated above, including evidence that under the custom prevailing at Fort Valley it was considered sufficient in point of time for a shipper desiring cars to give the railway company 24 hours notice of his requirements. We can not agree that the evidence in regard to the local custom was inadmissible for the reason assigned. What the railroad had been accustomed to do in its dealings with the shippers at Fort Valley could be considered by the jury as a circumstance, in determining the question of its diligence or negligence in the particular case (*Youmans Jewelry Co.* v. *Blackshear Bank,* 141 *Ga.* 357, 359, 80 S. E. 1005; *Southern Ry. Co.* v. *Woodward,* 39 *Ga. App.* 173, 146 S. E. 561; Texas & Pacific Ry. Co. *v.* Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. ed. 905; Brunke *v.* Missouri &c. Tel. Co., 115 Mo. App. 36, 90 S. W. 753; 45 C. J. 709-10; 17 C. J. 481) ; and proof of such a course of dealing would not, without more, establish an agreement to give a preference to the plaintiff in the particular transaction or a practice of preferring generally those of the locality. Prima facie, a custom which had grown up at Fort Valley and which the railroad continued to recognize was not an interference with the proper discharge of the defendant's duty as a common carrier throughout its interstate system; otherwise, the defendant having the duty of an impartial service would not have participated therein, because parties will not be presumed to have engaged in a custom that is contrary to legal principle or to have assented to an agreement that is forbidden by law. *Suddath* v. *Blanchard,* 39 *Ga. App.* 262 (2) (146 S. E. 798), and cit. The

mere fact that the custom may have been local was no objection to its application as between those whose conduct was referable thereto, since it is not the law that common carriers are affected only by such customs as are applicable generally throughout the territory which they serve. *Etheridge* v. *Central of Georgia Ry. Co.,* supra; *Durden* v. *Southern Ry. Co., 2 Ga. App.* 66 (2) (58 S. E. 299) ; 17 C. J. 455.

■ On cross-examination Myles L. Greene, a member of the plaintiff firm, testified as follows: "George P. Greene & Company is composed of my father and myself. My father is dead. George P. Greene & Company is not now active. We just operated one season as that partnership. I do not know how many cars of peaches went out of Fort Valley on the 22d, as I am not familiar with them. I do not remember whether this was the only car we had. George P. Greene & Company were buying peaches and selling them. We did them on commission with the grower. These particular peaches were owned by different ones. I could not give the ones, I would have to look up the record. I do not remember the ones who owned the peaches. Some of the peaches that came into the shed were brought in picking baskets. All were to be packed. As to who will get the money in case of recovery will depend upon whose peaches they were. I do not know, as I have not looked that up." In view of this evidence the defendant contended that the verdict was contrary to law, because it appeared that George P. Greene & Company was a trade-name for a partnership composed of Myles L. Greene and his father, and that his father was dead. In the motion for a new trial it is said "that the suit was not brought as surviving partner, and that the evidence showed that the partnership had been dissolved, as they operated only one season." It does not appear from the evidence whether George P. Greene died before or after the filing of the suit. If he died before the suit was filed, Myles L. Greene could have brought and prosecuted the suit as surviving partner, but the fact that instead of doing this he used the firm name would not have made the suit void or rendered the verdict and judgment in his favor contrary to law. The style in which he elected to sue would constitute a mere matter of form, and would furnish no ground for denying a recovery as a matter of law. If George P. Greene died after the suit was filed, there was a mere failure to amend the suit so that

it should thence proceed in the name of the surviving partner. Assuming, without deciding, that after the death of George P. Greene it would have been technically proper to bring or prosecute the action only in the name of the surviving partner, the suit was not fatally defective for a failure to observe such formality, since it could have been corrected by amendment. See, in this connection, Civil Code (1910), § 3176; *City of Atlanta* v. *Dooly, 74 Ga. 702* (5) ; *Louisville & Nashville R. Co.* v. *Morse,* 143 *Ga.* 110 (84 S. E. 428) ; *Georgia Northern Ry. Co.* v. *Snellgrove,* 16 *Ga. App.* 344 (4) (85 S. E. 790) ; *United States Fidelity &c. Co.* v. *Koehler,* 36 *Ga. App.* 396 (4), 411 (137 S. E. 85) ; *Becker* v. *Truitt,* 39 *Ga. App.* 286 (2) (146 S. E. 654) ; 47 C. J. 1093.

■  Upon the basis of the evidence quoted in the preceding division, it is further contended that the plaintiff did not own the peaches, but that the title was in others for whom the plaintiff was selling on commission, and thus that the plaintiff was not entitled to sue. Counsel for the plaintiff says that this point is without merit, because of the principle that a carrier can not dispute the title of the person delivering the goods to him, by setting up adverse title in himself, or a title in third persons which is not being enforced against him. Civil Code (1910), § 2740. This principle might be applicable if the suit were based upon a contract; but, instead, the action is one ex delicto, in which the plaintiff is seeking a recovery for a wrong alleged to have been committed by the defendant before the assumption of contractual relations. We are of the opinion, however, that the defendant's position is untenable in view of another principle which appears to be applicable under the evidence. The evidence authorized the inference that the plaintiff had the custody and control of the peaches, and had expended time and labor in packing and otherwise preparing them for shipment. There being further evidence to authorize the inference that the plaintiff was a factor or commission merchant, the jury were authorized to find in favor of the plaintiff's right to sue, as claimed. Section 3610 of the Code provides that an agent having possession, actual or constructive, of the property of his principal, has a right of action for any interference with that possession by third persons. While this section has been construed as referring only to an agent who has a property either general or special in the personalty in his possession (*Mitchell* v. *Georgia &*

*Alabama Ry.*, 111 *Ga.* 760, 36 S. E. 971, 51 L. R. A. 622), the evidence was sufficient to bring the plaintiff within this rule. As to the authority of a factor, see Civil Code (1910), § 3609; *Ruan* v. *Gunn*, 77 *Ga.* 53; *American Sugar Refining Co.* v. *McGhee*, 96 *Ga.* 27 (2) (21 S. E. 383); 25 C. J. 340.

■ From all the evidence the jury were authorized to infer the existence of such facts as to raise a duty on the part of the defendant as to furnishing the car.. A further question for determination was whether there was a breach of such duty. We think the jury could have found that the defendant did not exercise reasonable diligence toward complying with the plaintiff's request. The evidence tended to show that peaches in the vicinity of Fort Valley matured rapidly about the date of June 22, 1925, and that on that day 161 cars were placed for the use of shippers by the defendant carrier, 138 of which were on regular orders and 23 of which were on emergency orders. The evidence does not show when any of the regular orders were placed, or that the defendant could not reasonably have furnished a car for the use of the plaintiff on the "afternoon run" of that date. The defendant was not without a duty to anticipate a rapid ripening of peaches and the consequent need of enlarged facilities. Anderson *v.* Chicago &c. R. Co., 208 Mich. 424 (175 N. W. 246). One of the witnesses for the plaintiff testified as follows: "When peaches ripen very fast, that, of course, makes more orders on the railroads for cars. As a general proposition, the railroads do this; they anticipate to a very large extent what the movement would be by the week. When they get into the season they keep men in the territory at all times, making surveys to see just about how these peaches will ripen and how many cars will be necessary. I think they have been extremely accurate as to what their requirements will be in case of emergency. I think as a general proposition they try to anticipate and add additional cars for emergency. They get caught out a few times, but very seldom. I don't believe there has ever been a car shortage of over two in twenty or twenty-five years. . . I don't [know] if 1925 was one of these times they had a car shortage. The railroad does not assume any liability for emergency orders, but do the best they can under the circumstances." Obviously, the defendant could have ascertained the approximate acreage devoted to the production of peaches in the vicinity of Fort Valley, as well as the

probable quantity of production, and there is no evidence to show that the ripening of peaches on or about June 22, 1925, was so unusually rapid as to present an extraordinary condition, that is, a condition which the defendant should not reasonably have foreseen and provided against. Questions of negligence and diligence are usually for determination by the jury, and in the present case the issue was one for their solution. *Western & Atlantic R. Co.* v. *Summerour,* 139 *Ga.* 545 (2) (77 S. E. 802) ; *Saunders* v. *Payne,* 29 *Ga. App.* 615 (4) (116 S. E. 349) ; *Central of Georgia Ry. Co.* v. *Griner,* 33 *Ga. App.* 705 (127 S. E. 878). It has been said that "it is the duty of a railroad company to provide facilities for the transportation of goods, but that this duty is not an absolute one; and that the company must furnish cars sufficient to transport goods offered in the usual and ordinary course of business, but that it is not bound to anticipate and prepare for an unexpected press of business." *Southern Ry. Co.* v. *Moore,* 133 *Ga.* 806 (2), 813 (67 S. E. 85, 26 L. R. A. (N. S.) 851). In Pennsylvania R. Co. *v.* Puritan Coal Mining Co., 237 U. S. 121 (35 Sup. Ct. 484, 59 L. ed. 867), the Supreme Court of the United States said: "Ordinarily a shipper, on reasonable demand, would be entitled to all the cars which it could promptly load with freight to be transported over the carrier's line. But that is not an absolute right; and the carrier is not liable if its failure to furnish cars was the result of sudden and great demands which it had no reason to apprehend would be made, and which it could not reasonably have been expected to meet in full. The common law of old, in requiring the carrier to receive all goods and passengers, recognized that "if his coach be full" he was not liable for failing to transport more than he could carry. Hutchinson, Carriers, 146; Love *v.* Hobbs, 2 Shower, K. B. 127; Riley *v.* Horne, 5 Bing. 217, 2 Moore & P. 331, 30 Revised Rep. 576; Peet *v.* Chicago & Northwestern R. Co., 20 Wis. 594, 91 Am. D. 446. The same principle is applicable to those who transport freight in cars drawn by steam locomotives. The law exacts only what is reasonable from such carriers, but, at the same time, requires that they should be equally reasonable in the treatment of their patrons. In case of car shortage occasioned by unexpected demands, they are bound to treat shippers fairly, if not identically. In determining how the inadequate supply shall be distributed, it might be necessary to consider the character of the

freight tendered—whether perishable or staple, and whether a necessity of life, needed in crowded cities, and the like."

In Atlantic Coast Line R. Co. v. Geraty, 91 C. C. A. 602 (166 Fed. 10, 20 L. R. A. (N. S.) 310), it was held that a railroad company which owes a duty to furnish refrigerator cars to transport garden truck can not escape responsibility to furnish sufficient cars upon the ground that the crop was unusually large, provided it was no larger than might reasonably have been expected from the acreage planted, knowledge of which the railroad company either possessed or had the means of obtaining. See further, in this connection, *Southern Ry. Co.* v. *Atlanta Sand Co.*, 135 *Ga.* 35 (5, 6) (68 S. E. 807); *Wadley Southern Ry. Co.* v. *Kent*, 145 *Ga.* 689 (2, 3) (89 S. E. 765); Houston & Texas Central R. Co. v. Mayes, 201 U. S. 321 (26 Sup. Ct. 491, 50 L. ed. 772); Pennsylvania R. Co. v. Sonman Shaft Coal Co., 242 U. S. 120 (37 Sup. Ct. 46, 61 L. ed. 188); Pacific Fruit &c. Co. v. Northern Pacific R. Co., 109 Wash. 481 (186 Pac. 852, 10 A. L. R. 337, and note).

■ The evidence was ample to support the verdict as to each issue involved, and no reversible error appears. We have not deemd it necessary to mention specifically each ground of the motion for a new trial, but have endeavored to dispose of the exceptions on principle rather than by a treatment of the various assignments of error seriatim. Ground 10 of the motion for a new trial, which contains an exception to a portion of the court's charge, is without merit if we are correct in other conclusions stated. Construed in the light of the entire charge, the excerpt complained of in ground 11 of the motion was not subject to exception upon the ground that it expressed an opinion that the defendant had not exercised due care and diligence.

The court did not err in refusing a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*