27561. KEENER, administrator, *v.* ADDIS.

DECIDED NOVEMBER 13, 1939.

*Bynum & Frankum,* for plaintiff in error.
*Holden & Smith,* contra.

BROYLES, C. J.   On August 7, 1934, Charles T. Addis filed his petition for damages against Kenney Cragg.   On February 27, 1935, a jury returned a verdict for the plaintiff in the sum of $125, and the court rendered a judgment thereon.   After filing his motion for a new trial Cragg died, and his administrator, Ed Keener, was duly made a party in the case.   Keener then amended the motion for new trial.   The court overruled the motion, and Keener excepted.   The petition in the case may be summarized as follows: (1) The defendant is a resident of Rabun County, Georgia.   (2) On January 9, 1924, the plaintiff bought from the defendant a tract of land described in the copy of a deed attached to the petition.   (3) "6.07 acres of said tract  . .  is bottom land, and at the time plaintiff purchased same  . .  was above the average bottom land suitable to the growth of corn and vegetables, such

as cabbage, tomatoes, green beans, and potatoes." (4) On January 9, 1924, defendant "owned and was in possession of land lying above and adjoining the land of plaintiff. The defendant has not conveyed and has not released possession of said adjoining land, but is now the owner thereof and in possession of same." (5) After plaintiff bought said land, took his deed, and went into possession in the spring of 1925, defendant cut a dry-land ditch 156 feet in length across his land, thereby diverting surface-water from his land onto the bottom lands of plaintiff. (6) At the time of each and every rain that has fallen upon the lands of defendant within four years last past, defendant, by virtue of said ditch, has drained, collected, and diverted onto the bottom lands of plaintiff surface-water from not less than four and a half acres of land, most of which is cleared land and in pasture. (7) Before said ditch was cut, the surface-water naturally drained onto the bottom lands of the defendant. (8) The diverting of said surface-water onto the land of plaintiff has covered not less than two acres of said bottom land with sand and gravel, thereby causing said two acres to be almost useless for cultivation for the years 1931, 1932, 1933, and 1934, in that said two acres of said bottom land, after having been planted in corn at a great expense on the part of plaintiff, for each of said years, did not produce corn, but produced a poor grade of roughness (roughage?). Said surface-water so flooded the remaining 4.07 acres of said bottom land with water that the soil and fertilizer were washed therefrom, thereby decreasing by half the value of the corn crops grown thereon for the years 1931, 1932, 1933, and 1934. (9) The diverting of said surface-water onto the bottom land of plaintiff during the years 1931, 1932, 1933, and 1934 so flooded the 6.07 acres of bottom land with water, sand, and gravel as to make said land totally unfit for the cultivation of vegetables such as cabbage, tomatoes, green beans, and potatoes, and prevented plaintiff from growing cabbage, tomatoes, green beans, or potatoes on said bottom land during said years. (10) By said nuisance the plaintiff has been damaged in his crops, due to the fact that he has been prevented from growing cabbage, tomatoes, green beans, and potatoes, as follows: 1931 $200, 1932 $200, 1933 $200, and 1934 $200, making a total of $800 damage. (11) The defendant has had possession and control of said dry-land ditch or nuisance since its creation by him, and

during the years 1931, 1932, 1933, and 1934. (12) Said nuisance is abatable, and the defendant has promised time and time again, since its creation and since January 1, 1931, to abate said nuisance, but he has failed to do so. (13) The plaintiff prays that he be compensated for damage to said crops, and for damage by having been prevented from growing cabbage, tomatoes, green beans, and potatoes on said bottom land, as follows: "$200 for the year 1931, $200 for the year 1932, $200 for the year 1933, and $200 for the year 1934, making a total of $800."

The answer of the defendant was substantially as follows: (1) Paragraph 1 of the petition is admitted. (2) Paragraph 2 of the petition is admitted, except the original deed will show exactly what defendant conveyed to plaintiff. (3) Paragraph 3 is denied. (4) Defendant, answering paragraph 4, says that he contracted and sold to Taylor Stancil and his wife all of his said property, including the land mentioned in paragraph 4, and defendant now lives with Stancil on said land. (5) Paragraphs 5, 6, 7, 8, 9, 10, 11, and 12 of the petition are denied. We deem it unnecessary, for the purposes of this decision, to do more than indicate briefly, and somewhat generally, the nature of the amendment to the answer, as follows: On March 30, 1934, Charles T. Addis and Kenney Cragg entered into an agreement to settle the controversy out of which the present action arose, by Cragg agreeing to dig a ditch that would cause the surface-water that flowed from his land onto that of Addis to flow onto Cragg's land. Cragg had said ditch nearly completed, when Addis, by accusing the two men whom Cragg had employed to dig the ditch of trespassing on his land, frightened them away and prevented the completion of the ditch.

"A nuisance is anything that works hurt, inconvenience, or damage to another." Code, § 72-101. "A private nuisance is one limited in its injurious effects to one or a few individuals." § 72-102. "A private nuisance may injure either the person or property, or both, and in either case a right of action accrues to the person injured or damaged." § 72-104. In *Mayor &c. of Albany* v. *Sikes*, 94 *Ga.* 30, 35 (20 S. E. 257, 26 L. R. A. 653, 47 Am. St. R. 132), a unanimous court expressed the view that "one landed proprietor has no right to concentrate and collect [surface-water], and thus cause it to be discharged upon the land of a lower proprietor in greater quantities at a particular locality, or in a manner different

from that in which the water would be received by the lower estate if it simply ran down upon it from the upper by the law of gravitation." "A continuing nuisance does not necessarily mean a constant and unceasing nuisance, but a nuisance which occurs so often, and is so unnecessarily an incident of the use of property complained of, that it can be fairly said to be continuous, although not constant or unceasing." 46 C. J. 650, § 7, citing *Central of Georgia Ry. Co.* v. *Americus Construction Co., 133 Ga. 392, 398 (65 S. E. 855)*; *Farley* v. *Gate City Gas-Light Co., 105 Ga. 323, 338 (31 S. E. 193)*. "Where one creates a nuisance and permits it to remain, it is treated as a continuing wrong and giving rise, over and over again, to causes of action. But the principle upon which one is charged as a continuing wrong-doer is that he has a legal right, and is under a legal duty, to terminate the cause of the injury." *City Council of Augusta* v. *Lombard, 101 Ga. 724, 727 (28 S. E. 994)*, and cit. The plaintiff "must show the existence of the nuisance complained of, that he has suffered injury, and that the injury complained of was caused by the alleged nuisance." 46 C. J. 809, § 462, citing *Simpson* v. *DuPont Powder Co., 143 Ga. 465 (85 S. E. 344, L. R. A. 1915E, 430)*. "In actions for nuisances, as in other actions for torts, the measure of damages is compensation to the plaintiff for the actual injury inflicted." *Farley* v. *Gate City Gas-Light Co.,* supra. Under the authorities cited, there can be no question that the petition in the instant case sets out a cause of action for a continuing abatable nuisance. In this connection see *Danielly* v. *Cheeves, 94 Ga. 263 (21 S. E. 524)*. While there is no demurrer in the case, we have deemed it proper to state briefly some of the fundamental law pertaining to nuisances, as a basis for discussing several of the grounds of the motion for new trial.

The first ground of the amendment to the motion for a new trial avers that the court erred in charging the jury as follows: "I charge you this principle of law: whenever the right to enjoy one's property to the fullest is invaded, and injury arises therefrom, he may recover any damages sustained by reason of such invasion, nor is he bound to do anything to avoid the consequences thereof." Error is assigned, because this charge instructed the jury that the plaintiff was "not bound to do anything to avoid the consequences thereof," instead of charging them that "where by a breach of

contract, or negligence, one is injured, he is bound to lessen the damages as far as practicable by the use of ordinary care and diligence." The excerpt complained of is taken verbatim from *Athens Manufacturing Co.* v. *Rucker,* 80 *Ga.* 291 (4) (4 S. E. 885). In that decision the court said: "We do not think that this is a case of negligence. If this company raised their dam, thereby causing water in the creek to run over the plaintiff's land, and thereby injuring and damaging him, that was an invasion of his rights, and was a positive act on the part of the defendant, and not a case of negligence; nor was it negligence on the part of the plaintiff not to do anything to avoid the consequences of their act. Every man has the right to enjoy his property to the fullest extent, and whenever that right is invaded by another and injury accrues to him, he is entitled to his damages therefor. The evidence fails to show that the plaintiff did anything that led to or increased this damage. He did nothing, and he had a right to do nothing; and if they invaded his rights, they were liable to him for any damages which he sustained by reason of such invasion." "The general rule is that when one is injured by the negligence of another, the injured party is bound to lessen the damages as far as practicable by the use of ordinary care and diligence; but this rule does not apply in case of a positive tort." *Holbrook* v. *Norcross,* 121 *Ga.* 319 (2), 321 (48 S. E. 922). See also *Price* v. *High Shoals Mfg. Co.,* 132 *Ga.* 246 (3), 250 (64 S. E. 87, 22 L. R. A. (N. S.) 684); *City of Jackson* v. *Wilson,* 146 *Ga.* 250, 252 (91 S. E. 63); *City of Macon* v. *Hawes,* 27 *Ga. App.* 379 (108 S. E. 479). The Code, § 105-2014, states: "Where by negligence one is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence; but this does not apply in cases of positive and continuous torts." Citing 80 *Ga.* 291 (4 S. E. 885); 86 *Ga.* 648 (12 S. E. 1061); 83 *Ga.* 190 (9 S. E. 677); 83 *Ga.* 401 (10 S. E. 919). The very wording of the Code section refutes the contention of the plaintiff in error that it applies to the instant case. As we have already shown, the petition makes a case of a continuous abatable nuisance, and there is no merit in the contention that it does not, or in the insistence that the charge "was not applicable to the pleadings." We hold that the charge complained of is not erroneous for any reason assigned.

Ground 5 avers that the court erred in charging as follows: "If

you find that the defendant is liable at all, he would be liable only for such results as you find flowed directly, naturally, and proximately from the maintenance of the ditch alleged, in the manner it is alleged to have been operated. Therefore, if you find that the operation and maintenance of the ditch in the manner alleged was the cause of the nuisance, which directly, naturally, and proximately injured the plaintiff, the plaintiff would. be entitled to recover." The essence of the assignments of error on this charge appears from the following statement in the ground: "There was nothing alleged in the petition as a legal basis, as movant contends, upon which damages can be proven and determined, nothing alleged therein showing the productivity of the soil of [for?] any of the alleged crops, prior to the alleged nuisance, and after the alleged nuisance." The petition avers a right in the plaintiff, a violation of that right by the defendant, and injury to the plaintiff from such violation, with resultant damages in designated amounts. There was no demurrer, special or general, to the petition; and we are satisfied that the case as pleaded warranted the judge in instructing the jury as he did. This ground discloses no reversible error. See *Parrish* v. *Parrish,* 21 *Ga. App.* 275, 279 (94 S. E. 315); *Central Georgia Power Co.* v. *Fincher,* 141 *Ga.* 191 (80 S. E. 645).

In ground 6 error is assigned on the following excerpt from the charge: "The measure of the plaintiff's damages, if he is entitled to recover, would be represented in the damage to the rental value of his land caused by the alleged nuisance, if you believe this nuisance, if any existed, did cause it, is the difference between the rental value of the land before the creation of the nuisance and its rental value afterwards." The charge is alleged to be erroneous: (a) Because "there were not any allegations in the petition . . alleging the rental value of the land" before and after "the alleged creation of the alleged nuisance." (b) Because the charge "was foreign to the allegations of the petition," and "instructed the jury to consider a measure of damages that was not alleged." In *Central Georgia Power Co.* v. *Pope,* 141 *Ga.* 186 (2) (80 S. E. 642, L. R. A. 1916D, 358), the court said: "In cases of nuisances which cause permanent injury to land, the ordinary rule is that the measure of damages is the depreciation in the market value; in regard to nuisances which are of a non-permanent, abatable,

or temporary nature, the depreciation in the usable or rental value ordinarily furnishes the measure. But, under some circumstances, there may also be a recovery for special damages. Joyce on Nuisances, § 488; 4 Suth. Dam. (3d ed.) §§ 1035, 1038, 1048." Let us consider the excerpt complained of, in connection with its context. The court instructed the jury: "I charge you that you can not guess or imagine damages, but you must ascertain damages from the facts proven in the case, and as alleged in the petition of the plaintiff. In cases of nuisance which cause permanent injury to land, the ordinary rule is that the measure of damages is the depreciation of the market value. But in this case . . they are not claiming damages for the depreciation in the market value of the land, but they are claiming damages under this second rule that I give you in charge. In regard to nuisances which are of a non-permanent, abatable, or temporary nature, the depreciation in the usable or rental value ordinarily furnishes the measure of damages. Now, is there any depreciation shown in the usable or rental value of the land in question? They are basing this suit upon what they claim to be a temporary nuisance or abatable nuisance— that is, the plaintiff is basing his suit upon that ground—and that rule I have just given you applies to cases of that kind, and applies to this case. But, under some circumstances, there may also be a recovery for special damages, and special damages are such as actually flowed from the act, and must be proven in order to be recovered. If there are any special damages claimed in this case, you can't guess at those things, but they must be proven by the evidence, and the burden is on the plaintiff to show you facts upon which you can base a recovery for special damages. In other words, you can't guess at the amount of any special damages claimed, but the burden is on the plaintiff to furnish you data upon which you can estimate any special damages, if they exist in this case." The above-quoted instructions are immediately followed by the excerpt complained of. While the averments of the petition in the instant case relating to injury and resulting damages are not as specific, clear, and understandable as might be desired, the defendant interposed no demurrer, and chose to go to trial on the petition just as it was. In these circumstances the judge had to interpret the petition as best he could, and shape his charge accordingly. After all, in actions for nuisances "the meas-

ure of damages is compensation to the plaintiff for the actual injury inflicted." *Farley* v. *Gate City Gas Co.,* supra. The petition alleges damage to crops and asks compensation therefor. It also alleges that the alleged nuisance rendered "said land totally unfit for the cultivation" of specified vegetables, and prevented plaintiff from growing those vegetables on the land for the four years stated. Considering together all the averments relating to injury and damage, the petition is fairly susceptible of being construed as averring that, for the four years stated, the land was rendered worse than worthless for agricultural purposes. The court gave the jury the ordinary rule of damages applicable to cases of temporary, abatable nuisances. See *Central Georgia Power Co.* v. *Pope,* supra. We do not think that the court committed reversible error, for any reason assigned, in giving the jury the instruction complained of.

Ground 7 is as follows: "Because, during the trial of said case, plaintiff tendered in evidence a plat which is included in the brief of evidence in this case on page 35, over the objections of movant, on the following grounds: Because it was not shown to be a correct plat. The plat was not shown to be correct by any witness. The court overruled this objection and allowed the plat in evidence to be considered by the jury. To this ruling of the court movant then and there excepted, now excepts, and assigns error to said ruling, and says that the same was admitted in evidence contrary to law, because the plat was not proven to be a correct plat by any witness in behalf of plaintiff, nor otherwise." "A ground of a motion for new trial assigning error on the admission in evidence, over stated objections of movant, of a document which is neither set out literally or in substance in the motion nor attached thereto as an exhibit properly identified, but is merely referred to as set out in the brief of evidence, presents no question for decision. *Ford* v. *Blackshear Mfg. Co.,* 140 *Ga.* 670 (79 S. E. 576)." *Perry* v. *Monroe,* 150 *Ga.* 26 (2) (102 S. E. 356). "Under repeated rulings of this court, such an assignment of error presents no question for decision, as the evidence objected to [certain documents], or at least the substance of it, should have been set out in the motion itself *or attached thereto as an exhibit, properly identified.*" *Roberts* v. *Devane,* 129 *Ga.* 604 (2), 608 (59 S. E. 289). See *Tarver* v. *Deppen,* 132 *Ga.* 798 (3) (65 S. E. 177, 24 L. R.

A. (N. S.) 1161) ; *Hester* v. *Muscogee Motor Co.,* 184 *Ga.* 49 (190 S. E. 591), and cit.; *Jones* v. *State,* 43 *Ga. App.* 494 (159 S. E. 780). The only information that the ground in the instant case gives as to the evidence objected to is that it was "a plat . . included in the brief of evidence . . on page 35." As a matter of fact there are *two plats* in the brief of evidence, neither of which appears on page 35 thereof, whether its pages be numbered from 17 to 49, as they actually are, or whether they be renumbered 1, 2, 3, etc. Not only does this ground present nothing for this court to consider, but it forcibly illustrates the wisdom of the rule enunciated and applied in the cases cited.

Ground 8 avers that the court erred in allowing "Charles T. Addis, plaintiff," to testify as follows: "In the year 1932 I grew approximately 100 bushels of corn on the bottom land and about 1800 bundles of fodder. In the year 1933 I grew about 80 bushels of corn and 1400 bundles of fodder, and in the year 1934 about 60 bushels of corn and about 1100 bundles of fodder or roughness. In 1932 corn was selling for 40 cents per bushel; in 1934, 75 cents a bushel, and in 1931 fodder was 2 cents a bundle, and in 1933 2 cents a bundle, and in 1934 2 cents a bundle. The market value of my corn grown on this land in 1931 was $40; fodder and roughness $46. The market value of the corn grown in 1932 was $40; fodder $36. The market value of the corn in 1933 was $32; and the fodder in that year was $28. The market value of the corn from this land in 1934 was $45. The market value of the fodder was $22." The ground recites: "Movant objected to all of this evidence at the time same was offered, on the grounds: 1. That such evidence was a conclusion. 2. That the rule would be to prove what the value was before the alleged creation of the alleged nuisance, and afterwards, and the difference would be the damages. 3. Because there are not any allegations of plaintiff in the case to authorize such proof. There is nothing alleging the value preceding the alleged injury and the value afterwards." The gist of the assignment of error is that the admission of the evidence was "erroneous and injurious to movant, contrary to law in such a case where there was no alleged market value of the crops prior to the alleged nuisance and afterwards," and because "there was no legal foundation in the pleadings to authorize such evidence to be admitted." Both the appellate courts of this State have consistently

adhered to the following rule stated in *Gully* v. *State*, 116 *Ga.* 527 (2) (42 S. E. 790) : "Where objection is made to specified evidence as a whole, part of which is admissible, and part inadmissible, and the objection does not point out the objectionable portion, there is no error in admitting the entire evidence." A more concise statement of the rule is made in the following language in *Robertson* v. *Cox*, 183 *Ga.* 744 (4) (189 S. E. 844) : "The admission of evidence over objection en bloc is not erroneous where some part of the evidence was admissible."

It will be observed that it is averred that "movant objected to all this evidence" on the ground that it was a conclusion. Under the rule stated above, our only inquiry is whether a part of the evidence was not subject to the objection made; and this query must unquestionably be answered in the affirmative. Certainly it was no conclusion of the plaintiff to testify that he grew approximately designated numbers of bushels of corn and specified numbers of bundles of fodder on his land in past years. Neither do we think that the court erred in admitting the evidence over the objection that "the rule would be to prove what the value was before the alleged creation of the alleged nuisance, and afterwards, and the difference would be the damages." Granting that this is the rule, testimony as to the quantity and value of the crops grown on the land after they were affected by the nuisance appears to be entirely appropriate and well within the rule. It may not be amiss to state here that in the well-considered case of International Agricultural Cor. *v.* Abercrombie, 184 Ala. 244 (63 So. 549, 49 L. R. A. (N. S.) 415), where the chief damages claimed as the result of an abatable nuisance were for diminished crop yield, the court held that "the measure of damages was . . the difference in the yield and the price of the crops with, and without, the presence of the fumes complained of." That decision cites, among numerous authorities, 12 L. R. A. (N. S.) 267, which contains an elaborate note on the subject. Neither did the court err in admitting the evidence over the third objection, that the pleadings did not authorize the proof, and that "there is nothing alleging the value preceding the alleged injury and the value afterwards." The petition certainly averred damage to crops; and if the defendant desired that the plaintiff plead more specifically and fully in that regard, he should have made his demand by a timely

special demurrer. "A petition which sets forth a cause of action, including a claim for damages such as would properly flow to the petitioner under the case as laid, but which states a wrong method or measure by which the amount of such damages is arrived at, is subject to special demurrer, but not to a mere general demurrer, since it is permissible, on the trial of the case, to prove the proper damages alleged and to measure them according to the true and correct method." *City Council of Augusta* v. *Lamar*, 37 *Ga. App.* 418 (5) (140 S. E. 763). To the same effect see *Ford* v. *Fargason*, 120 *Ga.* 708 (6) (48 S. E. 180); *Central of Georgia Ry. Co.* v. *Greene*, 41 *Ga. App.* 794, 799 (154 S. E. 809); *Lancaster* v. *Monroe*, 45 *Ga. App.* 496, 499 (165 S. E. 302). The authorities cited, in principle, control the question at issue adversely to the contention of plaintiff in error; and the court did not err in admitting the evidence for any reason assigned.

Ground 9 avers that the following testimony of the plaintiff was erroneously admitted in evidence: "Before this ditch was dug, and before this nuisance was created, this bottom land was capable of producing, and I produced on this bottom land, corn and fodder: 240 bushels of corn and 3500 bundles of fodder." This evidence was objected to "on the ground that it was not a question of what he could have produced, but it was the market value of what the land produced before and after the alleged nuisance." The testimony of Mr. Addis as to what the land was capable of producing, and what he actually produced on it, before the existence of the alleged nuisance, appears quite appropriate in assisting the jury to reach a conclusion as to what "was the market value of what the land produced before and after the alleged nuisance." There is no merit in the ground. It appears from what has been already said that there is no merit in ground 10, which avers that the verdict and judgment "are without pleadings to support them, in that there was no allegation in the petition alleging the productivity of the said land . . prior to the alleged damages and after the alleged damages;" and that the "verdict and judgment are null and void and contrary to law, because there are no pleadings in plaintiff's petition, nor otherwise in said case, upon which to base such a verdict and judgment." What appears in the motion for new trial as "special ground 11" merely avers that the court did not correct any of the rulings or charges complained of, and is really not a ground at all.

We come next to the general grounds of the motion for new trial. There was ample evidence in this case that the defendant maintained a continuing, abatable nuisance, as alleged in the petition, and that said nuisance was the proximate cause of injury and damage to the plaintiff's property. The evidence was conflicting as to whether the plaintiff was responsible for the failure of the defendant to perform the agreement entered into by them to settle the controversy; and the jury were warranted in finding against the contention of the defendant that the plaintiff prevented him from having the ditch dug to stop the flow of the water on his land. Hubert Watts, a neighbor of the plaintiff, swore: "I am acquainted with this bottom land. Without this ditch and this water running onto this bottom land during the years 1931 and through 1934, and with reasonable diligence and cultivation and using a reasonable amount of fertilizer, that land was capable of producing between 40 and 45 bushels of corn to the acre." The plaintiff testified: "Before this ditch was dug and before this nuisance was created, this bottom land was capable of producing, and I have produced, 240 bushels of corn and 3500 bundles of fodder. The crops were produced on that land in 1924 under the same manner and methods of cultivation for that year as for the years 1931, 1932, 1933, and 1934. I used in proportion the same kind of fertilizer in 1924 as I did in 1931, 1932, 1933, and 1934." The plaintiff testified how much corn and fodder he produced on the 6.07 acres of bottom land in each of the four years in question, and what the market value of these products was; and that "the rental value of this land before this dry-land ditch was cut and this water turned onto my land was, I would say, $150." The plaintiff further swore that he tried to grow cabbage on said land without success, and that "this water renders that bottom land unfit for growing beans and cabbage." It will be observed that the plaintiff's case depended largely on his own testimony, and the fact that he farmed the land himself after purchasing it from the defendant in 1924 may have impressed the jury with the idea that he was especially qualified to know what he was testifying about. The foregoing is a very meager statement of the evidence; but a careful study of the long brief of evidence in the case satisfies us that the court did not err in overruling the general grounds of the motion for new trial.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*