33384. WELCH *v.* HALEY.

Decided March 15, 1951.

*Wood & Tallant*, for plaintiff in error.

*William Butt, Herman J. Spence, L. B. Harrell, O. L. Foster,* contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ The defendant in error filed a motion to dismiss the writ of error on the ground that the bill of exceptions fails to designate either a plaintiff in error or a defendant in error. An examination of the record shows that R. C. Welch, an individual, does name himself as plaintiff in error. That Mrs. Haley is the defendant in error, while not stated in these precise words, is obvious from both the heading and body of the bill of exceptions. The rule is that, while the plaintiff in error and the defendant in error should be expressly designated, a failure to do so *eo nomine* will not work a dismissal, even in the absence of amendment, where the bill of exceptions affirmatively and unequivocally shows on its face who are the parties thereto. See *Greenwood* v. *Greenblatt*, 173 *Ga.* 551 (161 S. E. 135). The motion to dismiss the bill of exceptions is therefore overruled.

■ It has been noted that the protest filed to the return of the processioners raises three main issues: (1) that the line. as marked is not the true original line between land lot 304 and land lot 305; (2) that there has been acquiescence in the line as

claimed by the protestant for more than 40 years; and (3) that the processioners ignored evidence of actual occupancy of the disputed strip of land by persons other than the applicant. These issues will be examined in a consideration of the general grounds of the motion for a new trial only. Although the motion was amended by the addition of eight special grounds, counsel for the applicant strongly urge in their brief their contention that these present no question for the consideration of this court, as they are not complete within themselves. It appears that this contention is well taken. Grounds 1 and 2 of the amended motion object to the admission of the application, notice, affidavit of service, return of processioners, and plat into evidence, as being void "for the reason that the evidence showed that A. H. Clayton was an elected and duly qualified surveyor of Gilmer County and was at the time the application was made and the line run at the time the return was made." Neither the return, the plat, nor any of the other documentary evidence objected to was set up in these special grounds; nor was the evidence set out therein which showed the state of facts as contended by the protestant. Where the admission or rejection of documentary evidence is complained of in an amendment to a motion for a new trial, a copy of the document or its substance should be set forth in the special ground. *Huggins* v. *State,* 25 *Ga. App.* 38 (4) (103 S. E. 32); *Williamson* v. *Prather,* 188 *Ga.* 545 (4 S. E. 2d, 140); *Keener* v. *Addis,* 61 *Ga. App.* 40 (5 S. E. 2d, 695). The remaining grounds of the amended motion, which are but amplifications of the general grounds, deal with the weight and effect to be given certain evidence, but none of the evidence referred to is set out within the grounds, nor is it stated what objection, if any, was made to the evidence thus referred to. These grounds are therefore insufficient within themselves for consideration. See *Eley* v. *Reese,* 171 *Ga.* 212 (1) (155 S. E. 24); *Humphrey* v. *State,* 24 *Ga. App.* 22 (1) (99 S. E. 714); *McCranie* v. *State,* 51 *Ga. App.* 192 (179 S. E. 826).

■ ■ The applicant contends in her application that she is the owner of lot 304 in the 10th district and second section of Gilmer County, and she desires the original north-south line between lots 304 and 305 to be surveyed and marked anew. Her application names R. C. Welch, protestant, as an owner of ad-

joining land. It also names as adjoining landowners Frank W. Jarrett and others, none of whom, save the plaintiff in error, excepted to the verdict and judgment in this case. Under Chapter 85-16 of the Code, it was the duty of the processioners together with the surveyor to run and mark anew the original north-south line between lots 304 and 305 in the 10th district and second section of Gilmer County, as set out in the application, subject to all the rules and regulations set forth in this chapter as construed by our appellate courts. The processioners and surveyor attempted to do so. Although the evidence was in sharp conflict on this point, the jury was authorized to find that the starting point of the survey made by the processioners and the surveyor at the northeast corner of lot 304, the southwest corner of lot 273, the southeast corner of lot 272, and the northwest corner of lot 305 was the true corner of these lots and was the proper starting point. According to the undisputed testimony, the processioners and surveyor then proceeded south from this starting point a distance of 2618 feet, at which point their line intersected the original southern boundary line of the land lots in question. This point was unmarked. There was, however, no dispute in the testimony as to the location of the east-west land line marking the southern boundary of the land lots in question; and it is apparent that the land-lot line under process of survey, if run due south from the starting point, could have intersected the line, and thus established the corner, in only one place. In support of this general location of the southern terminus, there was the testimony of H. E. Pinson to the effect that his grandfather had told him it was about the gap of the ridge behind the old Holt house (a point approximately 15 or 20 feet north of the terminus as located). There was also evidence that land lots 272 and 273, immediately north of lots 304 and 305 respectively, were separated from each other by a hedge recognized as a land-lot line, and that a projection of the land-lot line as run by the processioners would correspond with the land-lot line as delineated by the hedge.

It is well settled that the surveyor and processioners have no authority to make and establish new lines, but their duty is to trace and mark anew old lines or those that can be taken as having been formerly located and established. *Mattox* v.

*DeLoach,* 32 *Ga. App.* 454 (123 S. E. 624); *Long* v. *Robertson,* 41 *Ga. App.* 712 (154 S. E. 464); *Smith* v. *Brinson,* 43 *Ga. App.* 248 (158 S. E. 454); *Reynolds* v. *Kinsey,* 50 *Ga. App.* 385 (178 S. E. 200); *Crumby* v. *Wilson,* 60 *Ga. App.* 734 (5 S. E. 2d, 99). "But even though the course and extent of the line itself may not have been actually marked out upon the earth's surface, yet, if there should exist a sufficient number of physically established corners or landmarks, the mere connecting of which by straight lines, or from which the projecting of the courses and distances shown by the plat would suffice to complete the boundary, it would be the duty of processioners . . so to ascertain, mark and establish the same, respecting always the rights had under actual possession as defined by section 3822 of the Civil Code." *Cosby* v. *Reid,* 21 *Ga. App.* 604 (1) (94 S. E. 824). "Upon ascertaining the location of either terminus . . the course of the line toward the other terminus being shown, the latter could be also determined." *Hayes* v. *Wilson,* 60 *Ga. App.* 731, 734 (5 S. E. 2d, 97). And, once a terminus on the original land line was ascertained, the course could be determined and the line projected, along such original land line. See *Turner* v. *Howser,* 82 *Ga. App.* 88 (60 S. E. 2d, 505). The evidence, although conflicting, was therefore sufficient to authorize a jury to find that the return of the processioners represented an actual remarking of the original land line between the lots in question.

But the protestant contends that the true line is 375 feet west of this line, and has been acquiesced in by the applicant and her predecessors in title for more than 7 years; and that the processioners ignored evidence of actual occupancy thereof by the protestant. On the question of acquiescence, there was evidence that a certain dogwood and pine tree had marks on them which would have authorized the jury to have found that they were original land-line marks. However, this testimony was strongly contradicted by the testimony of other witnesses. Therefore, a verdict as to whether these marks were or were not original land-line marks was not demanded either way. There is testimony that a son of one Sam Holt, who was the predecessor in ·title to lot 304 of the applicant, recognized that this dogwood and pine tree were on the line. However, the son

was not the owner, and this testimony is not sufficient to show that the owner recognized these trees as being on the line and acquiesced in it at this point. Also, the evidence of the protestant as to the clearing now owned by Jarrett does not show that the south end of the line between lots 304 and 305 was acquiesced in at this point for 7 years or more while he owned it and before he sold it to Jarrett. According to the evidence, he sold it to Jarrett about 1940, and it had been cleared for some time prior to that. This evidence, however, is not sufficient to show that this clearing was done for a sufficient period of time to establish the line by acquiescence. See Code, § 85-1602. The subsequent acquiescence of Mrs. Haley at this point would be between her and Jarrett, and would not affect the line of the property between her and the protestant. See *Stewart* v. *Jackson,* 144 *Ga.* 501 (2, 3) (87 S. E. 656). The only possession, on the part of Welch and his predecessors in title to which the evidence points, that would be material as between the applicant and the protestant, is that an iron-ore mine was opened by the Welches about 1853 on the assumption that the same was located on lot 305. While the opening of this iron-ore mine is west of the line run by the surveyor and the processioners, the testimony fails to show that this possession was actual for a period of more than 7 years, and therefore is not sufficient to establish the line contended by the protestant. It is apparent that the iron-ore mine was opened, worked for some period of time, and then abandoned. Thus the evidence, both as to acquiescence and adverse possession, would not have demanded a verdict in favor of the protestant.

It is contended, however, that the evidence of the processioners and surveyor affirmatively shows that they were intent upon only one thing—to find the original north-south line between the land lots; that in doing so they ignored fences, cultivated lands, and other evidence of possession; and that, as a result, the entire proceedings must be considered a nullity, as in violation of Code § 85-1603, requiring that, where actual possession has been had under a claim of right for more than seven years, such claim shall be respected, and the lines so marked as not to interfere with such possession. Where the processioners and surveyor testified that they ignored the claims of both sides,

and paid no attention to the possession of the parties, it appearing that the parties did actually claim such possession, their return must be rejected. *Boyce* v. *Cook,* 140 *Ga.* 360 (78 S. E. 1057) ; *Bowen* v. *Jackson,* 101 *Ga.* 817 (2) (29 S. E. 40). However, it does not appear that, as between the applicant and protestant, the disputed line had in any way been changed by fencing, cultivation, or building, it consisting of woodland and uncultivated land. South of the protestant's land was land which had been sold to Jarrett and others, and it does appear that on this portion of the line evidence of possession such as fencing and cultivation were ignored by the processioners in their effort to find "the original line." Jarrett and the other landowners involved were notified of the processioning proceedings. They were equally concerned with the protestant. Jarrett testified on the trial of the case. Had he been dissatisfied with the verdict and judgment, he could have appealed therefrom. As he did not do so, it does not lie in the protestant's mouth to complain that a third party has suffered from the failure of the processioners to take into account evidence of actual possession. Failure on their part to do so does not render the entire proceeding per se void, but the protestant may introduce such evidence of possession as may affect his own boundaries, and "as to the remainder of the line [the jury's] verdict should be according to their finding whether the line run by the processioners or that claimed by the protestant was the true line." *Stewart* v. *Jackson,* 144 *Ga.* 501 (supra).

The trial court did not err in overruling the motion for a new trial.

*Judgment affirmed. MacIntyre, P.J., and Gardner, J., concur.*