## 35063. DODSON *v.* KNOX.

Decided March 11, 1954.

*Allison & Pittard,* for plaintiff in error.

*R. F. Duncan,* contra.

Townsend, J. ▮ The undisputed evidence on the trial was to the effect that the land processioners and surveyor, after making certain trial surveys not in evidence here, came to the conclusion that the line they were to run would affect three tracts of land of 20 acres each, according to the deed, belonging respectively to the plaintiff in error, the defendant in error, and a third party; that these three tracts did not actually contain 60 acres in the aggregate, and that, "in order to do justice between the parties," as one of the processioners testified, they should "split the difference." Accordingly, they took as one point on the district line a rock pile contended by the defendant in error to be the true corner, and another point on the district line 81 to 95 feet below the rock pile which had been established by a trial survey as the corner, and divided the distance, setting up a corner (upon which

the rest of the survey depended) 37 feet below the rock pile. They took this corner arbitrarily and without regard to either original lines, possession, or the claims of the parties. This was obviously not an attempt to run and mark the lines anew, as contemplated by Code Ch. 85-16, and the lines as marked by the processioners were without evidence to support them. *Smith v. Brinson,* 43 *Ga. App.* 248 (158 S. E. 454).

■ "The issue on the trial of a protest in a processioning proceeding is not necessarily confined to whether the line marked by the processioners should be sustained, but it is permissible for the protestant to obtain a verdict setting up the true line as declared in his protest, if the evidence shall so warrant. *McCollum v. Thomason,* 32 *Ga. App.* 160 (122 S. E. 800) ; *Reynolds* v. *Kinsey,* 50 *Ga. App.* 385 (178 S. E. 200)." *Hayes* v. *Wilson,* 60 *Ga. App.* 731, 733 (5 S. E. 2d 97).

The line sought to be re-established began at an undisputed corner on the eastern side of the Duluth-Lawrenceville highway, and ran from there to the district line between the 6th and 7th land districts (the location of the district line being undisputed, but the corners on this line being in dispute), from there northwesterly along the district line, and then northeasterly to its terminus, a rock pile, the location of which was not in dispute. Dodson's land was located north of this line, and Knox's land south of it. The testimony in favor of the defendant, as to the first of these three lines, was that the rock pile on the district line had been recognized as a corner for over 30 years. The protestant, who was 78 years old, testified that he was born on the tract of land bounded by the disputed line and lived there most of his life; that his father and Frank Harrington (predecessors in title) had always recognized it as the corner; that more than 20 years previously he had, at the request of Mr. McGee, predecessor in title to the plaintiff in error, pointed out the line to him as a straight line between the starting point on the Duluth-Lawrenceville highway and the rock pile on the district line, and both parties had acquiesced in and treated that as being the true line; and that it lay just north of a little wagon road which paralleled it. Accordingly, there was evidence to support the line as claimed by the protestant, in the 6th land district, and the rock pile as being the corner. The protestant

owned a 20-acre tract in the 7th land district in the shape of a parallelogram, of which the district line was the westerly side, the rock pile on the district line was the southwest corner, and a rock pile recognized by both parties as the northeast corner of the line between their respective tracts was the northeast corner. Along the northerly line between the rock pile and the district line, there were parts of two fences, designated as an old fence which had been put up by the protestant's father, and a new fence put up by the protestant's son. The son testified that his grandfather had told him the old fence was not on the line, was a few feet south of it, and the new fence was erected south of the old fence. The land so enclosed was in pasture at times in the past, and the line as run by the processioners came between the old and new fences, and thus tended to cut off land as to which there was evidence of possession. North of the fences, there was no evidence of possession or cultivation, and it was contended that the line running from the northeastern rock pile to the district line was a straight line, both parties agreeing that the rock pile was the northeastern corner, and that the line ran thence westerly in a straight line to the district line, but not agreeing on the point on the district line. A deed dated 1888 in the protestant's chain of title was properly introduced in evidence (*Roberts* v. *Atlanta Cemetery Assn.*, 146 *Ga.* 490 (4), 71 S. E. 675), and by following the description therein contained, with the southwestern rock pile on the district line as a starting point, going northerly along the district line the designated number of feet required by the deed, and thence easterly to the northeastern rock pile, the westerly and northerly sides of the 20-acre tract described in the deed would be established as contended by the protestant. The jury was authorized to find that the exact location of the northerly line had never been marked out on the earth's surface, and that there was no question as to the original line having been changed by possession or operation of law; but the applicant's contention is that, because the north corner on the district line had never actually been marked, there was no evidence which would authorize a verdict for the protestant.

As to this contention, it has frequently been stated that, "even though the course and extent of the lines themselves may not

have been physically marked out in their entirety upon the earth's surface, yet if there should exist a sufficient number of physically established corners or landmarks, the mere connecting of which by straight lines would suffice to complete the boundaries . . . it would be the duty of processioners, in accordance with the provisions of Code § 85-1601 et seq. to so ascertain and establish the same, but respecting always any rights had under actual possession as defined by § 85-1603." *Byrd* v. *McLucas*, 194 *Ga.* 40, 41 (20 S. E. 2d 597) ; *Cosby* v. *Reid*, 21 *Ga. App.* 604 (1) (94 S. E. 824); *Welch* v. *Haley*, 83 *Ga. App.* 492, 496 (64 S. E. 2d 364). "Upon ascertaining the location of either terminus as alleged in the protest, the course of the line toward the other terminus being shown, the latter could be also determined." *Hayes* v. *Wilson*, 60 *Ga. App.* 731, 734 (5 S. E. 2d 97).

It follows, therefore, that the jury was authorized to find, in support of the land line as contended by the protestant, that no rights under actual possession were involved, and that sufficient courses, distances, and termini were established to make the line as contended by the protestant easily ascertainable by the mere projection of straight lines along known courses for known distances from known terminal points. The verdict was therefore supported by evidence, and the trial court did not err in denying the motion for a new trial.

*Judgment affirmed. Gardner, P.J., and Carlisle, J., concur.*